**UNITED STATES of America**

v.

**Timothy Walter STINE, Appellant.**

**No. 80–1294.**

United States Court of Appeals,
Third Circuit.

Argued Nov. 4, 1980.

Decided April 24, 1981.

Rehearing and Rehearing In Banc
Denied May 19, 1981.

Fern H. Schwaber (argued), Asst. Defender, Defender Ass'n of Philadelphia, Philadelphia, Pa., for appellant.

Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Section, Robert E. Welsh, Jr. (argued), Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before ADAMS and SLOVITER, Circuit Judges, and KNOX, District Judge.*

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

This is an appeal from an order of the district court which revoked appellant's probation for violation of one of the probation conditions. Appellant was sentenced to imprisonment for a term of one year. Appellant claims that the special probation condition requiring that he participate in a program of psychological counseling was unconstitutional.

### I.

Appellant, Timothy Walter Stine, was charged with the illegal receipt of a firearm

* Honorable William W. Knox, United States District Judge for the Western District of Pennsylvania, sitting by designation.

in violation of 18 U.S.C. § 922(h)(1) (1976) (unlawful for convicted felon to receive firearm transported in interstate commerce). During the course of the jury trial on the federal firearm charge, Stine dismissed his retained attorney and elected to proceed *pro se.* He was found guilty on April 17, 1979 and his *pro se* motions for judgment of acquittal or new trial were denied by the court. On June 25, 1979 Stine was sentenced to three years' imprisonment; execution of the sentence was suspended and he was placed on probation for five years. Following filing of a timely notice of appeal, the appeal was withdrawn on Stine's motion.

Stine commenced his period of probation on June 25. One of the conditions of his probation stated that:

> Defendant shall be required to participate on a satisfactory basis within the sole discretion of the U.S. Probation Office in a program of psychological counseling, the nature and length of such program to be determined within the sole discretion of the U.S. Probation Office and for a minimum period of ONE (1) YEAR; any lack of cooperation or inability to participate successfully in such program as determined within the sole discretion of the U.S. Probation Office shall be deemed a violation of probation.

The court also directed the Probation Office to submit written reports every 90 days concerning Stine's progress in participating in the counseling program.

On October 16, 1979 the Probation Office filed a petition for revocation of probation, alleging that Stine had not complied with the psychological counseling condition. At a hearing on this petition on October 30, 1979, Probation Officer Richard Gochnaur testified without contradiction that Stine had attended a counseling session on July 23, 1979, but had failed to attend subsequently scheduled sessions on July 30 and August 6. On August 9, Stine advised Gochnaur that he would not comply with the counseling requirement, and throughout September he refused to attend psychiatric evaluation sessions which he had previously

agreed to attend. Stine stated that he would attend a final session at the Mental Health Treatment Center of the Reading Hospital. Gochnaur testified that Stine had not violated any other condition of his probation and had never been committed to a mental hospital.

At the conclusion of the October 30, 1979 hearing, the court continued the matter of probation violation and gave Stine six weeks to comply fully with the original requirement of counseling. On November 1, 1979, Stine met again with his probation officer and told him he would not cooperate in any testing or evaluation but agreed to one meeting with a doctor at the Mental Health Treatment Center. In response to Stine's suggestion that the counseling condition might be unconstitutional, the officer advised Stine to comply until the condition was adjudicated unconstitutional. On seven subsequent meetings with Gochnaur in November and December, Stine persisted in his position that he needed no psychological counseling, but refused to undergo preliminary testing. He acknowledged that he was in violation of the condition and was informed that this might result in an order of incarceration. Stine also refused to cooperate with Gochnaur's suggestion that Stine arrange for an evaluation by a doctor of his own choice. Thereafter, the Probation Office petitioned for a further hearing on violation of probation.

At a hearing on February 8, 1980, Gochnaur testified that Stine was married, had a child, was employed and had never been evaluated by a physician as being a danger to himself or the community. Stine admitted that he was in violation of the condition. On February 8, 1980 the district court revoked Stine's probation and ordered him incarcerated for a period of one year. In Findings of Fact and Conclusions of Law entered February 13, 1980, the district court held that Stine violated the conditions of his probation. The court did not address Stine's constitutional challenge to the original imposition of a counseling requirement. Instead the court stated that its imposition of the counseling requirement was founded

on, *inter alia*, reports from the Probation Office and the court's own observation of Stine's behavior during his two trials [1] and in the course of in chambers conferences. The court later amended its Findings of Fact and Conclusions of Law to include the following specific indications of Stine's "aberrant behavior":

A. Stine appeared for his second trial wearing a T-shirt upon which was inscribed in large letters "My case is a cover up."

B. Stine adamantly refused to remove the T-shirt, and finally agreed only to wear it inside out so as to obscure the lettering.

C. Stine was unable to retain private counsel after he dismissed his attorney from his first trial although he was willing to pay for one.

D. During the course of his second trial, Stine had frequent arguments with his court-appointed attorney and finally dismissed him in front of the jury while Stine was testifying from the witness stand.

E. Stine exhibited a consistent inability to interact maturely or harmoniously with his attorneys during his trials.

F. Throughout both of his trials Stine insisted that this case is part of a grand conspiracy on the part of certain persons in Reading to prevent him from exposing corruption in Reading. He also contended that his attorneys from both trials were involved in this conspiracy.

G. Stine's testimony at the trials was often rambling and unintelligible, and not at all responsive to the questions posed.

*United States v. Stine*, No. 77–314 (E.D.Pa. March 25, 1980).

Further additions to the record were added by the trial court in response to Stine's filing of a notice of appeal. The court noted that Stine had been convicted in state court in 1978 of "terroristic threats," a charge stemming from his telephoning the Reading, Pennsylvania City Hall and "threaten[ing] to commit a crime of violence with intent to terrorize another and threaten[ing] to kidnap a hostage from City Hall...." Stine's other convictions from the same incident were for carrying firearms without a license (a .38 calibre pistol) and possession of marijuana. *United States v. Stine*, No. 77–314 (E.D.Pa. July 8, 1980). Stine was granted bail pending this appeal.

II.

On appeal Stine contends that the psychological counseling requirement imposed on him "interferes with [his] right of mentation and right of privacy" and that "[t]here has been no showing that the probation condition bears either a reasonable relationship to [his] treatment ... or the protection of the community or that it is based on a compelling state interest." Appellant's Brief at 15. The government claims that notwithstanding Stine's constitutional challenge to the probation condition, our review must be limited to determining whether the trial court abused its discretion by requiring psychological counseling and that the condition need only be "reasonably related" to the purposes of probation. Moreover, the government disputes the constitutional challenge on the merits, contending that the "right of privacy does not extend to protect Stine's decision not to participate in a program of psychological counseling" because the decision to forego counseling sessions does not relate to a matter so "fundamental" as to be " 'implicit in the concept of ordered liberty' and deserving of constitutional protection." Appellee's Brief at 10.

III.

The use of probation as an alternative to incarceration has a long history in this country, possibly dating back as far as 1681, and was statutorily authorized in Massachusetts in 1878.[2] A. Campbell, *Law of Sen-*

---

1. Stine's first conviction was set aside on his motion for a new trial. *United States v. Stine*, 458 F.Supp. 366 (E.D.Pa.1978), *aff'd mem.*, 591 F.2d 1337 (3d Cir. 1979).

2. Mass.Laws of 1878, ch. 198. Currently all 50 states as well as the federal government have probation or similar "nonconfinement" systems. ABA Standards for Criminal Justice

*tencing* 52 (1978) [hereafter cited as Campbell, *Sentencing*]; S. Rubin, *The Law of Criminal Correction* 206 (2d ed. 1973). A federal statute authorizing the imposition of probation was passed in 1925,[3] following a decision of the United States Supreme Court that probation ordered by a judge without statutory authority was an unconstitutional intrusion upon the prerogatives of the executive and legislature. *Ex parte United States*, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916). The current statute granting federal judges the power to place defendants on probation provides:

> Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court ... when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon *such terms and conditions as the court deems best.*

18 U.S.C. § 3651 (1976) (emphasis added).

█ The "essence" of probation is contained in the conditions imposed by the court on the probationer's activities. *See*

Note, *Judicial Review of Probation Conditions*, 67 Colum.L.Rev. 181, 181 (1967) [hereafter Note, *Probation Conditions*]. Probation is typically granted on certain standard conditions, such as periodic reporting to a probation officer, restrictions on leaving the jurisdiction, and compliance with all laws,[4] as well as special conditions individually tailored to fit the defendant and the offense of which s/he was convicted.

Because the statute permits judges to impose such probation conditions as they "deem best," the terms and conditions of probation, like the use of probation itself, are matters largely committed to the discretion of the trial court.[5] Nonetheless, appellate courts have reviewed probation conditions to determine whether the conditions imposed are reasonably related to the purposes of punishment. In *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 264 (9th Cir. 1975) (en banc), the court noted that the "guiding principle which has emerged in construing the Probation Act is that the only permissible conditions are those that, when considered in context, can reasonably be said to contribute significantly both to the rehabilitation of the convicted person and to the protection of the public."[6] Ap-

§ 18–2.3 (Sentences not involving confinement), Commentary at 18.78 n.16 (2d ed. 1980).

**3.** Act of March 4, 1925, ch. 521, § 1, 43 Stat. 1259 (current version at 18 U.S.C. § 3651 (1976)). For a general discussion of the history of the Probation Act, *see Roberts v. United States*, 320 U.S. 264, 268–72, 64 S.Ct. 113, 115–17, 88 L.Ed. 41 (1943).

**4.** Some jurisdictions have mandatory conditions detailed in their probation statutes. For example, both Michigan and West Virginia have codified the requirement that probationers not leave the state without the consent of the court. Mich.Comp.Laws Ann. § 771.3 (Cum.Supp. 1979–1980); W.Va.Code § 62–12–9 (1977).

**5.** *See* A. Campbell, *Law of Sentencing* 79 (1978) (cardinal concept governing whether an eligible defendant gets probation is judicial discretion); R. Dawson, *Sentencing: The Decision as to Type, Length, and Conditions of Sentence* 378–405 (1969); Alschuler, *Sentencing Reform and Parole Release Guidelines*, 51 U.Colo.L. Rev. 237, 238 (1980) (even the most ambitious of the state determinate sentencing statutes

leave critical "in-out" decision to the uncontrolled discretion of trial judge).

**6.** Both the Model Penal Code and the ABA Standards for Criminal Justice advocate the incorporation into probation statutes of standards restricting the judge's discretion. The Model Penal Code would permit the judge to attach conditions "reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience." Model Penal Code § 301.1(1), (2)(*I*) (Proposed Official Draft 1962). Similarly, the ABA Standards recommend that:

> Conditions imposed by the court should be reasonably related to the purposes of sentencing, including the goal of rehabilitation, and should not be unduly restrictive of the probationer's liberty or autonomy. Where fundamental rights are involved, special care should be taken to avoid overbroad restrictions or restraints which are so vague or ambiguous as to fail to give real guidance.

ABA Standards for Criminal Justice § 18–2.3(e) (2d ed. 1980).

plying this standard, the court invalidated as overbroad the condition that probationer "submit to search of her person or property at any time when requested by a law-enforcement officer." *Id.* at 261. Similarly, in *Porth v. Templar*, 453 F.2d 330 (10th Cir. 1971), the court invalidated a condition that the probationer not speak out against tax laws.[7]

In the *Consuelo-Gonzalez* case, the court emphasized that probation conditions which infringe upon fundamental rights are not automatically impermissible but may be subject to "special scrutiny" to determine whether the limitation serves the dual objectives of rehabilitation and public safety. 521 F.2d at 265 & n.14. *See also United States v. Pierce*, 561 F.2d 735, 739 (9th Cir. 1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 516 (1978) ("reasonably related" test applies to conditions infringing on constitutional rights); *United States v. Tonry*, 605 F.2d 144, 150 (5th Cir. 1979) ("probation condition is not necessarily invalid simply because it affects a probationer's ability to exercise constitutionally protected rights").

In the instant case, appellant claims that the probation condition that he participate in a program of psychological counseling unconstitutionally interferes with his mental process in violation of the First Amendment and his right of privacy. He relies on the increasing body of case law affirming the retention of constitutional rights by institutionalized mental patients, including in particular the right, in certain circumstances, to refuse treatment. *See, e. g., Rogers v. Okin*, 478 F.Supp. 1342 (D.Mass.1979), *aff'd in relevant part and rev'd in part*, 634 F.2d 650 (1st Cir. 1980), *cert. granted*, —— U.S. ——, 101 S.Ct. 1972, 68 L.Ed.2d 293 (1981); *Rennie v. Klein*, 476 F.Supp. 1294 (D.N.J.1979) (awaiting rehearing *en banc* before this court, Nos. 79–2576/77).

Appellant's challenge is unusual because psychological or psychiatric treatment is generally considered to be an acceptable sentencing option.[8] The federal Probation Act specifically provides that persons on probation may be required to "reside in or participate in the program of a residential community treatment center." 18 U.S.C. § 3651. Cases in both the Supreme Court and this court have presented situations where psychological counseling was a condition of probation or parole, *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); *United States v. Buechler*, 557 F.2d 1002, 1004 (3d Cir. 1977), although the condition itself was not under attack. *See also Steinberg v. Police Court of Albany*, 610 F.2d 449, 450–51 (6th Cir. 1979) (without discussing constitutionality of condition,

7. *See also United States v. Tonry*, 605 F.2d 144, 147 (5th Cir. 1979), where the court adopted the *Consuelo-Gonzalez-Porth* test, but expanded it to recognize other purposes of punishment. The court held that a "condition of probation satisfies the statute so long as it is reasonably related to rehabilitation of the probationer, protection of the public against other offenses during its term, deterrence of future misconduct by the probationer or general deterrence of others, condign punishment, or some combination of these objectives." *Id.* at 148 (upholding condition prohibiting violator of Federal Election Campaign Act from running for political office or engaging in political activity).

8. The Model Penal Code would permit the court to require a defendant to "undergo available medical or psychiatric treatment and to enter and remain in a specified institution, when required for that purpose." Model Penal Code § 301.1(2)(c) (Proposed Official Draft 1962). The ABA Standard is similar, allowing the court to require the defendant to "undergo[] available medical or psychiatric treatment, which treatment may include periodic testing for narcotics use." ABA Standards for Criminal Justice § 18–2.3(f)(v). Unfortunately the commentary includes no discussion of this provision.

The power of a court under Pennsylvania law to impose probation conditioned on the probationer receiving inpatient psychiatric treatment is considered in Ludwig, *Treatment and Sentencing: The Power of the Court, the Rights of the Defendant, and the Legal and Ethical Implications of Sentencing Alternatives*, 8 Contemp. Drug Prob. 381 (1979). Judge Ludwig suggests that notwithstanding the salutary purposes served by such sentences, they might circumvent the procedures developed for mental health commitments. *Id.* at 384–85. These concerns are not implicated where the court only orders a program of outpatient counseling, as in this case.

court upheld parole revocation based on parolee's violation of order that he seek outpatient mental therapy.)

In the only opinion we have found where the validity of a psychiatric counseling condition was discussed, *In re Bushman*, 1 Cal.3d 767, 463 P.2d 727, 83 Cal.Rptr. 375 (1970) (en banc), a pilot convicted of disturbing the peace for his actions in protesting the condition of a runway was sentenced to probation upon conditions which included the requirement that he seek psychiatric treatment at his own expense with a qualified psychiatrist approved by the court. The California Supreme Court, in an opinion by Chief Justice Traynor, invalidated the treatment requirement, finding no evidence to support the trial judge's conclusion that the defendant needed psychiatric care.[9] The court noted that there had been no expert witnesses, nor had the defendant been questioned about the subject. It also concluded that "without any showing that mental instability contributed to that offense, psychiatric care cannot reasonably be related to future criminality." 83 Cal.Rptr. at 381, 463 P.2d at 733.[10]

▮ Under the circumstances of this case, we find it unnecessary to meet appellant's challenge to the condition of psychiatric counseling attached to his probation. In the first place, it does not appear that he protested the entry of such a condition at the time of its imposition. Although he was unrepresented by counsel at that time, he does not now contend that he did not understand what was required of him; to the contrary, it is clear that appellant understood the condition and that considerable time and effort were expended by the Probation Office to facilitate his compliance. Nevertheless, appellant flatly refused to cooperate and persisted in that refusal over the course of several months, ignoring the advice from his probation officer that he should comply with the condition until his constitutional challenge could be resolved. It is clear, and appellant concedes, that at his final revocation hearing he was in violation of a court-imposed condition of probation. Accordingly, his only "defense" is his contention that the order itself was unconstitutional. In the second place, appellant failed to appeal the imposition of that sen-

**9.** Defendant, an attorney and the president-elect of the airport's board of directors, had dumped a bucketful of gravel and metal debris from the runway over the desk and papers of the chairman of the airport's board of directors during a meeting.

**10.** It appears that in this case also the original probation condition was imposed on the basis of the trial court's observation, without any recent or previous medical opinion to support the need for psychological counseling. Furthermore, the sentence required counseling for a full year, without any provision that the length of time of such condition could be reduced if the counselors believed there was no longer any continued need for such treatment. In *Addington v. Texas*, 441 U.S. 418, 426–27, 99 S.Ct. 1804, 1809–10, 60 L.Ed.2d 323 (1979), the Court stated, "At one time or another every person exhibits some abnormal behavior which might be perceived by some as symptomatic of a mental or emotional disorder, but which is in fact within a range of conduct that is generally acceptable. *Obviously such behavior is no basis for compelled treatment. . . .*" (emphasis added). The Court in that case recognized that "[w]hether the individual is mentally ill and dangerous . . . and is in need of confined therapy turns on the *meaning* of the facts which must be interpreted by expert psychiatrists and

psychologists." *Id.* at 429, 99 S.Ct. at 1811 (emphasis in original). On the other hand, a probation condition is not equivalent to confinement for treatment. Also, we recognize that district judges may acquire considerable experience in evaluating behavior, and that they are entitled to considerable discretion in imposing conditions of probation. Since we do not decide appellant's challenge to the constitutionality of a probation condition of involuntary counseling because of our disposition of this case on other grounds, we need not decide *whether expert opinion on the need for such treatment should always be sought.*

In any event, appellant in this case is not in a position to complain about the absence of expert opinion because he was given ample opportunity by a very patient probation officer to submit to psychological evaluation, and he persistently refused to cooperate. Had such testing confirmed his contention that he did not require counseling, the court may have taken appropriate steps to modify the sentence or the duration of the required treatment. Under these circumstances, we refrain from considering whether the appellant's courtroom behavior and his prior conviction for threats of violence were sufficient to justify the imposition of the counseling requirement.

tence. Furthermore, he neither requested reduction of the sentence by deletion of that condition nor challenged it as illegal before the district court, as he could have under Rule 35 of the Federal Rules of Criminal Procedure.

 It is fundamental to our legal system that "all orders and judgments of courts must be complied with promptly. If a person to whom a judge directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal." *Maness v. Meyers,* 419 U.S. 449, 458, 95 S.Ct. 584, 590, 42 L.Ed.2d 574 (1975). A person who makes a private determination that an order is incorrect, or even unconstitutional, may properly be convicted of criminal contempt for violation of the order even if his or her private determination is later proven correct in the courts. *Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); *Howat v. Kansas,* 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550 (1922).[11]

In *Walker v. City of Birmingham,* black ministers who wanted to protest Birmingham's racial atmosphere by holding demonstrations on Good Friday and Easter Sunday were denied permits by city officials. Before the first of the scheduled demonstrations, they were served with copies of an injunction issued *ex parte* by a state court prohibiting them from carrying on any demonstrations without a permit.[12] "Unable to believe that such a blatant and broadly drawn prior restraint on their First Amendment rights could be valid," 388 U.S. at 327, 87 S.Ct. at 1835 (Warren, C. J., dissenting), petitioners disobeyed the injunction and demonstrated as planned. They were subsequently found guilty in the state court of criminal contempt, and their convictions were upheld by the Supreme Court of Alabama. The state courts refused to consider petitioners' constitutional challenges to the indictment, holding on the basis of *Howat v. Kansas, supra,* that an order of a court must be obeyed until reversed.

The United States Supreme Court affirmed. Notwithstanding its recognition that petitioners' constitutional challenges "unquestionably raise substantial constitutional issues," 388 U.S. at 316, 317, 87 S.Ct. at 1829, 1830,[13] the Court held that a defendant may not challenge the constitutionality of an underlying injunction on appeal from a contempt conviction. *Id.* at 320, 87 S.Ct. at 1831. The Court repeatedly noted that petitioners had made no attempt to have the injunction modified or dissolved by the state appellate courts under the procedures available for such actions. *Id.* at 311, 315, 317, 318, 319, 87 S.Ct. at 1827, 1829, 1830, 1831. Although vital First Amendment rights were involved and the injunction and the underlying ordinance were unquestionably suspect, the Court was unwilling to excuse petitioners' failure to make any attempt to challenge the court order before disobeying it. *Id.* at 320–21, 87 S.Ct. at 1831–32.[14]

11. The obligation to obey judicial orders is to be distinguished from the right of a person convicted of violating a criminal statute to defend his or her conduct solely on the grounds of the statute's unconstitutionality. See *Walker v. City of Birmingham,* 388 U.S. 307, 327, 87 S.Ct. 1824, 1835, 18 L.Ed.2d 1210 (1967) (Warren, C. J., dissenting).

12. The injunction was based on a Birmingham city ordinance requiring permits and the City's representation that the demonstrations, like those which had preceded them in the previous week, would threaten the safety, peace and tranquility of the city and imminently endanger the general welfare of the residents of the city.

13. The underlying ordinance was in fact held unconstitutional by the Supreme Court in an appeal by one of these petitioners from his conviction for violation of the ordinance. *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969).

14. See also *Commonwealth of Pennsylvania v. Local Union 542, Int'l Union of Operating Eng'rs (Appeal of Freedman),* 552 F.2d 498, 505–06 (3d Cir.), *cert. denied,* 434 U.S. 822, 98 S.Ct. 67, 54 L.Ed.2d 79 (1977) (on appeal of attorney's criminal contempt for disobeying order of trial judge not to state reasons for objection on record, court refused to consider merits of order that was violated).

An analogous principle emerges from the cases construing the statute which makes it unlawful for a convicted felon to receive or possess a firearm. 18 U.S.C. § 922, 18 U.S. C.App. § 1202. In *Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), the Court held that an allegedly unconstitutional conviction could serve as the predicate for a conviction for unlawful receipt of a firearm. Where the defendant had not previously attacked his initial conviction, he had the status of a convicted felon at the time of his act and hence violated the statute. As the Court noted, "Congress clearly intended that the defendant clear his status *before* obtaining a firearm...." *Id.* at 64, 100 S.Ct. at 920 (emphasis in original). This court extended the rule in *United States v. MacGregor,* 617 F.2d 348 (3d Cir. 1980), where we held that a conviction under 18 U.S.C.App. § 1202(a)(1) could be upheld on collateral attack even where the predicate felony conviction had since been reversed on appeal. An important factor in these cases was the availability to the convicted felon of methods for having cleared his record before purchasing a firearm. *See United States v. Lewis,* 445 U.S. at 64, 100 S.Ct. at 920.

The justification for permitting contempt convictions to stand despite a subsequent determination that the order disobeyed was invalid or unconstitutional stems from the system's need for compliance with its mandates. The same policy considerations persuade us to hold that the alleged unconstitutionality of probation ·conditions cannot be raised as a defense to their violation in a probation revocation hearing where the conditions could have been challenged on direct appeal of the judgment of conviction or on an attack to the sentence through a

Rule 35 motion. Probationers are convicted offenders who have been given a second chance to demonstrate that they are capable of living in the community as law-abiding citizens. To allow them to make an independent determination of which judicial orders to follow and which to ignore is simply inconsistent with the premises of probation.

Reliance on the contempt line of cases requires a reviewing court to insure that there were, in fact, procedures available to the defendant to challenge the condition. Under the common law of many jurisdictions, a convicted defendant who accepted probation was not permitted to appeal either the conviction or the probation terms unless and until probation was revoked and a "real" sentence imposed. *See* Note, *Probation Conditions,* 67 Col.L.Rev. at 193–96; Comment, *Probationer's Right to Appeal; Appellant's Right to Probation,* 28 U.Chi.L. Rev. 751 (1961). The practice was rationalized on the inconsistent theories that, by accepting the court's offer of probation, the defendant waived his or her right to object, or that probation was an interim step between conviction and possible later imposition of a sentence, which meant that there was no final order from which to appeal. Although this rule of nonappealability has increasingly been rejected,[15] the case law indicates some confusion as to the proper or available methods of challenging the validity of probation conditions. Where, as here, the defendant is only contesting the constitutionality of a probation condition, defendant can appeal directly from the judgment of conviction[16] or file a Rule 35 motion.[17]

In the case *sub judice,* appellant had an opportunity to challenge the constitutionality of the probation condition in the course

---

15. *See, e. g. Korematsu v. United States,* 319 U.S. 432, 434, 63 S.Ct. 1124, 1125, 87 L.Ed. 1497 (1943); *Berman v. United States,* 302 U.S. 211, 213, 58 S.Ct. 164, 166, 82 L.Ed. 204 (1937); *Delaney v. State,* 190 So.2d 578, 580 (Fla.1966); *State v. Martin,* 282 Or. 583, 580 P.2d 536, 538–39 (1978); *Commonwealth v. Elias,* 394 Pa. 639, 641, 149 A.2d 53, 54–55 (1959). *See also* ABA Standards for Criminal Justice § 18–2.3(b)(iv) (sentence of probation treated as final judgment for purposes of appeal and other procedural purposes); Model Penal Code § 301.6 (sentence of probation shall constitute final judgment for purposes including appeal).

16. The judgment of conviction is required to set forth the sentence imposed. Fed.R.Crim.P. 32(b)(1). Despite the general rule that federal appellate courts will not review sentences within the bounds prescribed by the statute, the federal courts have uniformly permitted defendants sentenced to probation to challenge the validity of their probation conditions on direct appeal from the judgment of conviction. *See, e. g., Fuller v. Oregon,* 417 U.S. 40, 94

of proceedings in which he was already involved. He filed a notice of appeal from the judgment of conviction but thereafter withdrew the appeal before filing a brief. In addition, he failed to seek relief from the trial court by filing a motion under Fed.R. Crim.P. 35 which permits correction at any time of an "illegal sentence," essentially petitioner's contention here. Therefore, he will not be heard to complain that the court's denial of his continued release on probation is impermissible because based on his violation of an unconstitutional condition.[18]

For the foregoing reasons, we affirm the judgment of the district court.

---

S.Ct. 2116, 40 L.Ed.2d 642 (1974); *United States v. Conforte*, 624 F.2d 869 (9th Cir.), *cert. denied*, —— U.S. ——, 101 S.Ct. 568, 66 L.Ed. 470 (1980); *United States v. Barrasso*, 372 F.2d 136 (3d Cir. 1967); *Whaley v. United States*, 324 F.2d 356 (9th Cir. 1963), *cert. denied*, 376 U.S. 911, 84 S.Ct. 665, 11 L.Ed.2d 609 (1964); *Berra v. United States*, 221 F.2d 590 (8th Cir. 1955), *aff'd*, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956); *Willis v. United States*, 250 A.2d 569 (D.C.Ct.App.1969). *See also United States v. Weber*, 437 F.2d 1218 (7th Cir.), *cert. denied*, 402 U.S. 1008, 91 S.Ct. 2189, 29 L.Ed.2d 430 (1971) (where defendant does not attack probation condition on direct appeal, foreclosed from attacking in probation revocation proceedings); *In re Bushman*, 1 Cal.3d 767, 463 P.2d 727, 733, 83 Cal.Rptr. 375, 381 (1970) (en banc) (court notes that probation condition may be attacked either on direct appeal of order granting probation or on petition for writ of habeas corpus).

**17.** In some circumstances the courts have permitted a collateral challenge to the probation condition. In *United States v. Consuelo-Gonzalez*, 521 F.2d 259 (9th Cir. 1975) (en banc), the probationer's challenge to a condition requiring her to submit at any time to a search of her person or property by any law enforcement officer was raised in a suppression hearing at a unrelated criminal trial. The probationer sought to challenge the introduction of evidence which had been seized in a search pursuant to this condition.

**18.** This case presents a different situation than that considered by the Supreme Court recently in *Wood v. Georgia*, —— U.S. ——, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981). In *Wood*, petitioners had been convicted of distributing obscene materials and had been sentenced to fines and probation. Monthly installment payments on the fines were expressly made a condition of their probation. *Id.* at ——, 101 S.Ct. at 1098. When petitioners failed to make any payments for three months, the trial court revoked their probation, notwithstanding "convincing evidence" of petitioners' inability to pay the fines. Although they had not earlier challenged the fines, petitioners argued on appeal from the revocations that "imprison[ment of] a probationer solely because of his inability to make installment payments on fines" is unconstitutional under the Equal Protection clause. *Id.* at —— —— ——, 101 S.Ct. at 1098–1100.

The procedural posture of the case at the time that the constitutional challenge was presented does not appear to have been raised before the Supreme Court. Several factors, however, distinguish this case from the *Wood* case. First, the petitioners in *Wood* did not have an equal protection argument at the stage when the fines were imposed. The issue presented to the Court for review was whether it was constitutional to *imprison* probationers for inability to pay fines, not whether it was constitutional to fine them in the first instance. They could not have been expected to appeal from their convictions on the basis of a speculative argument which did not ripen unless and until probation was revoked.

Secondly, the Court disposed of the case by a remand to the lower court for consideration of the possibility that there was a conflict of interest on the part of petitioners' lawyer due to the lawyer's relationship with petitioners' employer. The Court was concerned because the petitioners, a projectionist and a ticket-taker at a movie theatre and a cashier at a bookstore, had an agreement with their employer that it would pay for legal representation, post bonds and pay fines in the event of prosecution on obscenity charges stemming from their employment. *Id.* at ——, 101 S.Ct. at 1100. Because of this arrangement, the Court surmised that the employer might have wanted a judicial determination that persons cannot be jailed for their inability to pay fines, thus effectively relieving the employer of its self-assumed obligation to protect its employees. As the Court viewed the case, "[t]o obtain such a ruling ... it was necessary for petitioners to receive fines that were beyond their own means and then risk jail by failing to pay." *Id.* Since petitioners' attorney was paid by someone who might have benefited from the revocation of petitioners' probation, they could hardly be faulted for having failed to press for an appeal in the first instance on their own initiative.