**UNITED STATES of America**

v.

**Timothy Walter STINE.**

Crim. A. No. 77–314.

United States District Court, E. D. Pennsylvania.

Aug. 25, 1981.

Fern H. Schwaber, Defender Assoc. of Philadelphia, Philadelphia, Pa., for plaintiff.

Peter F. Vaira, U. S. Atty., Robert E. Welsh, Jr., Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Defendant on July 22, 1977 was charged in a two count indictment with unlawful receipt of a firearm (.45 calibre semi-automatic rifle) by one who has been convicted of a crime punishable by imprisonment for a term exceeding one year (18 U.S.C. § 922(h)(1)) and unlawful possession of a firearm (Ruger Super Blackhawk .44 calibre magnum revolver) by one who has been convicted of a felony (18 U.S.C. App. § 1202(a)(1)). At that time he was free on bail from a conviction in the Court of Common Pleas of Berks County for terroristic threats, possession of marijuana, and firearms violations. Defendant was tried and convicted on both counts on October 21, 1977, but for reasons not pertinent here on June 14, 1978 I granted a new trial as to both counts. *See United States v. Stine,* 458 F.Supp. 366 (E.D.Pa.1978), *aff'd mem.* 591 F.2d 1337 (3d Cir. 1979). Following the granting of the government's motion on March 30, 1979 to dismiss count two, defendant was tried for the second time on count one (unlawful receipt of a firearm by one who has been convicted of a crime punishable by imprisonment for a term exceeding one year) and after numerous delays in scheduling trial because of defendant's inability to obtain counsel although he could afford counsel, defendant was again convicted on April 17, 1979 on count 1. On June 25, 1979 I sentenced defendant to three years imprisonment, suspended execution of the sentence, and placed him on five

years probation. Condition three of defendant's probation was that:

> Defendant shall be required to participate on a satisfactory basis within the sole discretion of the U.S. Probation Office in a program of psychological counseling the nature and length of such program to be determined within the sole discretion of the U.S. Probation Office and for a minimum period of ONE (1) YEAR; any lack of cooperation or inability to participate successfully in such program as determined within the sole discretion of the U.S. Probation Office shall be deemed a violation of probation.

On October 16, 1979 the Probation Office filed a petition for revocation of probation, alleging that defendant had failed to comply with condition three of his probation. I held a hearing on October 30, 1979, during which it became clear that defendant had unilaterally refused to participate in any program of psychological counseling despite the efforts of the Probation Office to accommodate him in every way short of vitiating the counseling requirement altogether. In open court on that date I warned defendant of the seriousness of his behavior, and told him that if he continued to refuse to participate in psychological counseling, I would be forced to incarcerate him. I continued the hearing for six weeks in order to give defendant an opportunity to comply with the counseling requirement. Defendant persisted in his position that he did not need psychological counseling and refused to undergo even preliminary testing by a doctor of his own choice. I held a second hearing on February 8, 1980, at which defendant admitted that he was in violation of the counseling condition. Pursuant to findings of fact and conclusions of law entered on February 13, 1980, I found that defendant had violated the counseling requirement of his probation and ordered him incarcerated for one year, notwithstanding my original three year suspended sentence. I filed additional findings and conclusions on March 25, 1980 and July 8, 1980. Defendant appealed my order on the ground that the counseling requirement "interferes with [his] right of mentation and right of privacy" and that "[t]here has been no showing that the probation condition bears either a reasonable relationship to [his] treatment . . . or the protection of the community or that it is based on a compelling state interest." I granted him bail pending appeal. The court of appeals rejected the appeal, ruling that the issues raised should have been presented to me in the first instance. *United States v. Stine*, 646 F.2d 839 (3d Cir. 1981). Defendant has now filed a motion to correct an illegal sentence or in the alternative motion to reduce the sentence pursuant to Federal Rule of Criminal Procedure 35(a) and (b), arguing that the counseling requirement is unconstitutional in that it violates his right to mentation and privacy. For the reasons set forth below, the motion will be denied.

"Probation is typically granted on certain standard conditions . . . as well as special conditions individually tailored to fit the defendant and the offense of which s/he was charged . . . . Because the statute permits judges to impose such probation conditions as they 'deem best,' the terms and conditions of probation, like the use of probation itself, are matters largely committed to the discretion of the trial court." *United States v. Stine*, 646 F.2d at 842 (3d Cir. 1981) (footnotes omitted). This discretion is not unlimited, however. The "guiding principle which has emerged in construing the Probation Act is that the only permissible conditions are those that, when considered in context, can reasonably be said to contribute significantly both to the rehabilitation of the convicted person and to the protection of the public." *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 264 (9th Cir. 1975) (en banc). It should not be forgotten, however, that a probationer is a convicted criminal whose freedom is a matter of grace, and that thus society's interests in protection and punishment should also be considered in determining the propriety of conditions of probation. As the Fifth Circuit has recognized, "a condition of probation satisfies the statute so long as it is reasonably related to rehabilitation of the probationer, protection of the public against

other offenses during the term, deterrence of future misconduct by the probationer or general deterrence of others, condign punishment, or some combination of these objectives." *United States v. Tonry*, 605 F.2d 144, 148 (5th Cir. 1979). Recognizing the legitimacy of society's interest in deterrence and punishment, the Ninth Circuit elaborated on the *Consuelo-Gonzalez* test as follows:

In *United States v. Consuelo-Gonzalez*, we set out a general test for evaluating probation conditions imposed pursuant to the Federal Probation Act which may impinge upon constitutional freedoms: The conditions must be "reasonably related" to the purposes of the Act. Consideration of three factors is required to determine whether a reasonable relationship exists: (1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement. A balancing approach was articulated so as to facilitate an accommodation between the practical needs of the probation system and the constitutional guarantees of the Bill of Rights.

*United States v. Pierce*, 561 F.2d 735, 739 (9th Cir. 1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 516 (1978). Thus the "reasonably related" test applies to conditions of probation which may impinge upon constitutional rights, and a balancing approach must be taken in determining the propriety of such conditions. Viewed in this manner, it is clear that the counseling condition of defendant's probation based upon reasonable findings, bears a reasonable relationship to legitimate state objectives, and is neither unconstitutional nor improper.

I note initially that my determination to include the counseling requirement among the terms and conditions of defendant's probation was based upon more than defendant's insistence on wearing an inscribed tee shirt at his trial and his dismissing his counsel while testifying, as defendant suggests in his memorandum. To the contrary, I made numerous careful, considered and complete findings, all of which appear on the record, and all of which I incorporate herein. Among the findings which I considered in imposing the condition are the following:

A. Stine appeared for his second trial wearing a T-shirt upon which was inscribed in large letters "My case is a cover up."

B. Stine adamantly refused to remove the T-shirt, and finally agreed only to wear it inside out so as to obscure the lettering.

C. Stine was unable to retain private counsel after he dismissed his attorney from his first trial although he was willing to pay for one.

D. During the course of his second trial, Stine had frequent arguments with his court-appointed attorney and finally dismissed him in front of the jury while Stine was testifying from the witness stand.

E. Stine exhibited a consistent inability to interact maturely and harmoniously with his attorneys during his trials.

F. Throughout both of his trials Stine insisted that this case is part of a grand conspiracy on the part of certain persons in Reading to prevent him from exposing corruption in Reading. He also contended that his attorneys from both trials were involved in the conspiracy.

G. Stine's testimony at the trials was often rambling and unintelligible, and not at all responsive to the questions posed.

Further, as I stated in my order approving the Agreed Statement as Record on Appeal,

In imposing [the requirement of psychological counselling] at the sentencing of defendant on June 25, 1979, I considered among other factors the fact that on February 15, 1978 defendant was convicted in the Court of Common Pleas of Berks County, before the Honorable Forrest G. Schaeffer, of terroristic threats, firearms not to be carried without a license, and possession of marijuana. On February 28, 1979, defendant was sentenced on the charge of terroristic threats

to 18 months to 4 years in the Berks County Prison and was ordered to pay a fine of $250.00 plus costs. On the charge of firearms not be carried without a license, defendant was sentenced to a term of 6 months to 24 months at the Berks County Prison and was ordered to pay a fine of $250.00 plus costs. He was continued on $20,000 bail pending appeal. I note that the presentence report of the U.S. Probation Office dated May 18, 1979 states that "The charge of Terroristic Threats resulted when the defendant, on April 27, or April 28, 1977, telephoned the Reading, Pa., city hall and threatened to commit a crime of violence with intent to terrorize another and threatened to kidnap a hostage from City Hall, Reading, Pa. The firearm violations resulted when on April 28, 1977, the defendant appeared at City Hall, Reading, Pa. for traffic court and a search of his van revealed a small amount of marijuana and a .38 calibre pistol.

In addition, I considered defendant's behavior and demeanor during the two trials in which he appeared before me and his difficulty in obtaining counsel for the second trial although he could afford counsel. Based upon all of these factors, I concluded that defendant had exhibited irrational, highly unusual, and often inexplicable behavior, and had engaged in several dangerously antisocial, indeed criminal acts. Further, it was clear to me that much of defendant's aberrant behavior as well as many of his criminal acts resulted from his perception of a widespread conspiracy against him. These observations and findings set forth in the record clearly provided a reasonable basis for my imposing the counseling requirement to which defendant now objects.

Further, it is clear that the counseling requirement is reasonably related to the purposes of the Probation Act when examined pursuant to the *Pierce* test. If defendant's perception of a conspiracy against him as well as his inability to interact maturely with others were treated by psychological counseling, a major factor leading to defendant's criminal acts may have been re-moved. This would contribute significantly to defendant's rehabilitation as well as protect society from other similar acts by defendant. It is perhaps for this reason that the Third Circuit noted that "psychological or psychiatric treatment is generally considered to be an acceptable sentencing option." *United States v. Stine*, 646 F.2d at 843 (3d Cir. 1981). Further, I note that the probation condition at issue does not impose a requirement of drug therapy, psychosurgery, or similar drastic courses of treatment. Thus *Scott v. Plante*, 532 F.2d 939 (3d Cir. 1976), and the other cases concerning the constitutional right to refuse treatment, upon which defendant relies, are inapposite. What is required here is not solely consideration of the privacy right of an incarcerated individual to refuse treatment, but rather a balancing of defendant's constitutional rights with society's right to be protected from further criminal acts by a convicted felon who remains free. *United States v. Pierce, supra; United States v. Tonry, supra.* In light of defendant's repeated firearms violations and other criminal acts, it is clear that society requires protection from him. This could be accomplished by either incarcerating defendant or rehabilitating him. As discussed above, I concluded that psychological counseling could achieve rehabilitation, by far the less restrictive alternative. I thus struck the proper balance between defendant's right to privacy and society's right to be safe from a convicted felon. Thus it is clear that the counseling requirement of defendant's probation is reasonably based upon numerous findings in the record and bears a reasonable relationship to the purposes of the Probation Act. Consequently it is not unconstitutional, and is not an illegal sentence.

Defendant requests in the alternative that I reduce his sentence. In this regard I note that I could have incarcerated defendant for ten years following his conviction. I did not, but rather gave defendant every possible benefit of doubt, and suspended a three year prison sentence imposed in favor of probation. Defendant had no entitlement to probation, receiving it entirely as a

matter of grace pursuant to my belief that he could be rehabilitated through psychological counseling. Nevertheless defendant stubbornly defied his probation officer and rejected all attempts to accommodate him within the terms of his probation. I could have incarcerated him after the first violation of probation hearing, but rather gave him another chance to comply, coupled with a clear warning of the consequences should he continue to violate his probation. Defendant again arbitrarily refused to even talk to a counsellor, knowing full well that he was violating the terms of his probation. As a result he remained free without having taken any steps toward rehabilitation more than two years after his conviction. This left me no alternative but to impose a period of incarceration on defendant. I ordered him incarcerated for one year, which constitutes a reduction of his original three year sentence. In light of defendant's arbitrary, stubborn defiance of the orders of this court and the efforts of the Probation Department, which represented every possible accommodation to defendant's rights and needs, reducing defendant's sentence further would make a mockery of this court's authority and its obligation to society to protect it and to mete out punishment. Thus a further reduction of defendant's sentence would simply be inappropriate.

For all of these reasons, defendant's motion is denied.