UNITED STATES of America, Appellee,

v.

BEECH–NUT NUTRITION CORPORATION and Niels L. Hoyvald, Defendants,

Niels L. Hoyvald, Defendant–Appellant.

No. 605, Docket 90–1368.

United States Court of Appeals, Second Circuit.

Argued Nov. 27, 1990.

Decided Feb. 13, 1991.

John D. Cline, Washington, D.C. (Brendan V. Sullivan, Jr., Barry S. Simon, Williams & Connolly, Washington, D.C., of counsel), for defendant-appellant.

Jeffrey Toobin, Asst. U.S. Atty., E.D. N.Y., Brooklyn, N.Y. (Matthew E. Fishbein, Thomas H. Roche, Asst. U.S. Attys., Andrew J. Maloney, U.S. Atty., E.D.N.Y., of counsel), for appellee.

Before OAKES, Chief Judge, and LUMBARD and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

This is an appeal by a defendant serving a term of probation from a district court's denial of his request to travel in Europe to seek employment. Appellant's offense is a so-called white collar crime. He was the chief executive officer of a large food manufacturing company that foisted off on a confiding and credulous public adulterated apple juice for babies. Now that he has been sentenced, the past is over and done with. Probation looks to the future. One of its goals is to restore the probationer to a useful and constructive place in society. To that end, a probationer is given freedom from confinement in return for a promise of good behavior and an agreement to comply with the conditions imposed. The other goal of probation is to protect the public during the probationary period. The tension between these two goals lies at the heart of this litigation.

## FACTS

In November 1986 appellant, the president and chief executive officer of Beech-Nut Nutrition Corporation, was charged in 450 counts of a 470-count indictment arising out of the distribution of adulterated and misbranded apple juice. Following a three-month trial in the United States District Court for the Eastern District of New York (Platt, C.J.), a jury convicted appellant on 359 counts, but was unable to reach a verdict on 89 counts (the remaining two counts were dismissed on motion of the United States Attorney). The district court sentenced appellant to a term of imprisonment of a year and a day, fined him $100,000, imposed a $9,000 special assessment and ordered the defendant to pay the costs of prosecution. In March 1989 we reversed the judgment of conviction and dismissed the counts upon which defendant had been convicted on the ground that venue was improperly laid in the Eastern District instead of the Northern District of New York and remanded the case to the district court for a new trial. *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989). In August 1989 Hoyvald was retried before Chief Judge Platt on 19 of the counts on which a mistrial had been declared during his first trial. After four weeks of trial, the jury was unable to agree on a verdict and a mistrial was declared.

Rather than face a third trial appellant entered into a plea agreement with the

government on November 7, 1989. It was agreed that the government would recommend that the court impose a suspended sentence, five years probation, including 1000 hours of community service, and a $100,000 fine. On November 13, 1989 the district court accepted the plea and imposed sentence. No appeal was taken from it. At that plea proceeding Judge Platt agreed, at Hoyvald's request, to defer the beginning of his community service to give him three weeks time to travel to Denmark to visit his 84–year–old mother.

Six months later, in May 1990, Hoyvald again requested permission from his probation officer to return to Denmark to visit his mother, and then to be permitted to visit "East and West Germany, Switzerland, Hungary, Czechoslovakia, and Greece" on business, a journey that would take slightly more than three weeks. The Probation Department expressed no opposition to the appellant's trip so long as he "supplies an appropriate itinerary and documentation as to the business portions of his trip." The United States Attorney did not oppose the request. By order dated May 18, 1990, the district court granted appellant permission to visit his mother in Denmark for one week, but denied the application to travel to the other European countries.

On May 22, 1990 appellant renewed his request to travel to the other European countries by making a motion before Chief Judge Platt explaining that his purpose in traveling to "other countries in Europe" was to "look for a job and to investigate business opportunities" in those countries. Following a hearing on May 22 the district court reaffirmed its ruling that appellant could visit his mother in Denmark but denied the request to travel to other countries.

This appeal followed. We affirm.

## DISCUSSION

■ A threshold issue raised by the government is whether appellant lost the right to appeal the denial of his request because he failed to take an appeal from his original sentence. The government argues that appellant is, in effect, contesting the conditions of his probation, and not having done so at the time he was sentenced should be barred from appealing those conditions now. We disagree. Appellant is contesting the district court's application of the conditions of probation, not the conditions themselves. Hoyvald could not be expected to have appealed on this ground at the time the conditions of his probation were set, but before they had been allegedly unconstitutionally applied to him.

Such a distinction is made in *United States v. Stine*, 646 F.2d 839 (3d Cir.1981), where the conditions of probation purportedly being challenged—not their application—were not appealed timely. The court then held those conditions could not later be complained of. The *Stine* Court distinguished its result from that in *Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981). In *Wood*, though petitioners had not challenged at the time the fines set as a condition of probation, the Supreme Court permitted them to challenge the subsequent revocation of their probation as a result of their failure to make payments. The *Stine* Court viewed this as meaning that petitioners could not be expected to appeal on the basis of a speculative due process argument that did not ripen until later when probation was revoked. *See* 646 F.2d at 847 n. 18.

Similarly, in the instant case, there was nothing remarkable in Hoyvald's conditions of probation and no reason then existed for him to take an appeal with respect to them. Upon the application of the conditions, in what Hoyvald contends is a violation of his due process rights, a challenge was promptly and properly made. We conclude therefore appellant is entitled to maintain the present appeal, we turn therefore to the two arguments appellant advances in its support.

### A.

■ The first alleged error is that the district court's denial of his request violated the Federal Probation Act. *See* 18

U.S.C. §§ 3651 *et seq.* (1988). The basis of the denial of his request to travel to various countries in Europe to seek employment and business opportunities, defendant asserts, was not reasonably related to a permissible purpose and therefore violated the Act. *See* 18 U.S.C. § 3651 (applicable only to offenses, such as this one, committed before November 1, 1987). Appellant contends that a court may not restrict a probationer's freedom unless that restriction is reasonably related to rehabilitation or the protection of the public.

■ Since the two arguments appellant raises relate to the Probation Act we consider it now. Congress empowers courts having jurisdiction to try offenses against the United States, after entering a judgment of conviction, to suspend sentence "when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby," and to "place the defendant on probation for such period and upon such terms and conditions as the court deems best." 18 U.S.C. § 3651. Probation does not confer upon a convicted defendant the absolute liberty which ordinary citizens enjoy. Neither is a person on probation a prisoner absent the walls. Rather, a probationer has the right to "conditional liberty" which continues so long as the conditions of probation are observed. *See Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2599–2600, 33 L.Ed.2d 484 (1972).

■ The conditions imposed, as well as their application, must be measured against the twin aims of rehabilitating the defendant and protecting the public. *See United States v. Tolla,* 781 F.2d 29, 34 (2d Cir. 1986); *United States v. Pastore,* 537 F.2d 675, 681 (2d Cir.1976). The statute has vested broad authority in the sentencing court to fix the terms of probation, and these conditions may be set aside only if that discretion is abused. *See Fiore v. United States,* 696 F.2d 205, 207 (2d Cir. 1982).

Neither of these goals are served by the district court's decision, according to defendant, because its denial of permission to travel hinders his rehabilitation by making his job search more difficult, and the fact that he was allowed to travel to see his mother indicates the district court believed him not dangerous to the public. We disagree. Conditions of probation that limit a probationer's ability to engage in otherwise lawful activities have been upheld so long as the restraints imposed are reasonably related to the stated goals of probation. *See United States v. Gracia,* 755 F.2d 984, 991 (2d Cir.1985); *Pastore,* 537 F.2d at 681–82.

■ The district court could easily have concluded that limiting appellant's travels to a visit with his elderly mother would promote his rehabilitation, if only by reinforcing his perception that misdeeds do result in constraints on freedom (probation and its conditions may have punitive aspects), and that keeping close reins on his job search would serve to alleviate the danger to society posed by the possibility that Hoyvald might repeat similar offenses. Certainly the statute that empowers the district court to "place the defendant on probation for such period and upon such terms and conditions as the court deems best," 18 U.S.C. § 3651, also grants broad discretion to the court to apply the conditions it imposed originally in a manner it deems best, providing that the application of these conditions meets probation's designed objectives. In this case, we think they do. *See Tolla,* 781 F.2d at 35–36.

### B.

■ Appellant's principal assertion is that the district court's denial of his request to visit other countries in Europe was vindictive and, as such, violated his due process right to be free from being punished for doing what the law plainly allows him to do.

At oral argument, as part of the vindictiveness argument, appellant's counsel suggested a different judge should have presided over defendant's case. In that connection the panel requested the parties to address the application of E.D.N.Y. Div. Bus.R. 50.2(*l*)(1), which provides:

In a criminal case upon reversal of a judgment and a direction for retrial or resentence, on receipt of the mandate of the appellate court the clerk shall randomly select a different judge to preside over the case. Notwithstanding this provision the chief judge may order the case assigned to the original presiding judge to avoid placing an excessive burden on another judge.

Having heard from appellant's counsel and the government, we conclude the Rule speaks for itself insofar as a retrial or resentence following reversal on appeal is concerned. Nothing is said with respect to mistrials. We see no reason to interfere with the chief district court judge's interpretation and administration of its own division of business established under Rule 50.2(*l*)(1).

■ Moreover, we think the vindictiveness claim is totally unfounded. Concededly, this was a time consuming and expensive criminal proceeding. The two trials occupied Chief Judge Platt for nearly six months. Quite plainly, he felt strongly about the jury's finding defendant guilty on multiple counts of distributing adulterated baby food. The interests of the public, namely, that of the families who purchased this misleading product and who were victimized by defendant's conduct, was a matter that a judge accepting a plea agreement properly had in mind. Despite this, when it came to the court's attention during the plea and sentencing proceedings on November 13, 1989 that Hoyvald wanted three weeks to visit his mother in Denmark before going into the probation program, Judge Platt immediately responded: "I will delay the execution of the sentence imposed until after the three week period."

Six months later, appellant requested permission to visit his mother in Denmark a second time and to travel to several European countries in May and June, 1990 to establish or reestablish contacts in the business community. His attorney stated he had extensive experience working there and it was a likely place to talk to people who might give him a job. The district court said "yes" to visiting his mother a second time but "no" to the European business travel.

Hoyvald's five-year probationary term was only in its first year. The point of probation is to have the defendant available to the court's supervision. If the defendant is travelling in Europe for any considerable period (here over two weeks) such cannot be assured. This genuine concern and the fact that the district court allowed Hoyvald to visit his mother for a second time within seven months for one week undermine any claim of vindictiveness.

Further, the cases appellant relies on address situations where a defendant's sentence is increased after either retrial following a successful appeal or a successful challenge to a Parole Board determination. *See North Carolina v. Pearce*, 395 U.S. 711, 726, 89 S.Ct. 2072, 2081, 23 L.Ed.2d 656 (1969) (rebuttable presumption of vindictiveness when same judge sentences defendant more harshly following reversal and second conviction); *Texas v. McCullough*, 475 U.S. 134, 138, 106 S.Ct. 976, 978–79, 89 L.Ed.2d 104 (1986) (due process violation established if defendant can show actual vindictiveness upon resentencing); *Marshall v. Lansing*, 839 F.2d 933 (3d Cir. 1988) (unexplained decision by parole board to add two months to defendant's sentence because of conduct occurring before original sentencing that was ignored until defendant judicially questioned parole release determination violates due process).

We believe therefore that Chief Judge Platt acted well within his discretionary power when he denied appellant the privilege of traveling to various European countries. Here we discern no showing of vindictiveness against defendant and no violation of Hoyvald's right to due process.

## CONCLUSION

The orders of the district court accordingly are affirmed.

OAKES, Chief Judge, dissenting:

How permitting Hoyvald to travel to Europe to see his elderly mother but not to go job hunting will promote his rehabilitation I do not see. Neither the probation office,

which agreed to the work-seeking tour, nor the Government, which did not oppose Hoyvald's request, could see it either. How the district court could have thought it would promote his rehabilitation escapes me.

There is no suggestion in the record or otherwise that Hoyvald's being on probation constituted a threat to the public; indeed, if the district court thought otherwise it could not have in good conscience agreed to the plea agreement. Moreover, Hoyvald had performed that agreement to the letter, earning the praise of the New Jersey Department of Human Services for his work in connection with the corporate hiring of disabled persons, ("Mr. Hoyvald deserves to be credited for his absolute reliability, always friendly and courteous disposition, remarkable adaptability to assorted assignments and projects … excellent rapport … exceptional quality and value."), and the award of a plaque or certificate therefor. The man has an international executive expertise marred only by this concededly serious crime of having his company sell adulterated food, a crime for which he has paid a lot and is unlikely to repeat.

I am left with the only reason for the denial of permission as the one the district court, honestly if disingenuously, gave for it—that Hoyvald "got an extraordinary break" and "should have [been] given the same or as stringent a sentence" as his codefendant. The court said, drawing on what authority, Supreme Court or otherwise, we have been unable to find, "I view his probation the same way the Supreme Court said probation was, jail without the four walls." [1]

I thought probation was something different and that the Supreme Court had said so. Over fifty years ago it was called by Justice Roberts a "system of tutelage,"

*Frad v. Kelly,* 302 U.S. 312, 318, 58 S.Ct. 188, 192, 82 L.Ed. 282 (1937), and by Chief Justice Hughes as being "concerned with rehabilitation, not with the determination of guilt." *Berman v. United States,* 302 U.S. 211, 213, 58 S.Ct. 164, 166, 82 L.Ed. 204 (1937). We have more recently said as much. *See United States v. Tolla,* 781 F.2d 29, 33 (2d Cir.1986) ("Once a court lawfully determines that a defendant should be placed on probation, the focus of its concern must of necessity shift away from issues of guilt and punishment to those of rehabilitation and protection of the public.").

Under this standard, once the plea agreement was accepted and probation imposed, punishment could no longer be the guiding hand on the supervisory wheel. To the extent that the district court permitted it to be such, the court acted arbitrarily. I need not reach the question whether due process was thereby violated. I would simply in the exercise of this Court's supervisory power overturn the district court's action.

I accordingly dissent.

---

**1.** Perhaps this was a literary allusion to Richard Lovelace's

> Stone walls do not a prison make
> Nor iron bars a cage.

R. Lovelace, *To Althea From Prison* (1642). On the other hand, the court may have looked at probation with (for present purposes inapplicable) Sentencing Guidelines Commission glasses.

*See United States Sentencing Commission, Guidelines Manual,* ch. 5, Part B (listing the purposes of probation as "promoting respect for law, providing just punishment for the offense, achieving general deterrence, and protecting the public from further crimes by the defendant," but failing to mention the purpose of rehabilitation).