**UNITED STATES of America, Appellee,**

v.

**Ronald T. PEARCE, Appellant.**

**No. 85–5158.**

United States Court of Appeals,
Third Circuit.

Argued Jan. 8, 1986.

Decided June 12, 1986.

Stephen Chadwick Smith (argued), Lock Haven, Pa., for appellant.

Before WEIS, HIGGINBOTHAM and BECKER, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This is an appeal from a judgment of conviction for criminal contempt in the United States District Court for the Middle District of Pennsylvania. Appellant Ronald Pearce was convicted and sentenced to two years' imprisonment for refusing to comply with a court order compelling him to testify before a grand jury. Because Pearce was denied the opportunity to raise the invalidity of the underlying order as a defense, we vacate the conviction and remand for a new trial.

I.

On September 16, 1982, the government and Ronald Pearce executed a plea bargain agreement in the United States District Court for the Eastern District of Pennsylvania. Pearce pled guilty to conspiracy to manufacture methamphetamine, 21 U.S.C. § 846 (1982) and attempt to manufacture methamphetamine, *id.* In return for the plea, the government agreed to drop the charge that Pearce distributed methamphetamine and promised not to prosecute Pearce in the Middle District of Pennsylvania for related crimes. The government also promised not to call Pearce as a witness before a grand jury. Subsequent events reveal that the government understood that the promise not to call Pearce as a witness was restricted to grand juries convened in the Eastern District of Pennsylvania, whereas Pearce believed that the promise covered the Middle District of Pennsylvania as well.[1] After a hearing pursuant to Fed.R.Crim.P. 11, the district court accepted the plea agreement and, on

James J. West, U.S. Atty., and David C. Shipman (argued), Asst. U.S. Atty., Harrisburg, Pa., for appellee.

---

1. Pearce's counsel informed Judge John P. Fullam, the sentencing judge, that "Mr. Ruch [the prosecutor] has told me he does not intend to call him [Pearce] as a witness" and Judge Fullam responded that "that is binding as far as this United States Attorney's office is concerned." Pearce contends that, in the context of related grand jury investigations in the Eastern and Middle Districts, Judge Fullam's reference to "this United States Attorney's Office" covered the Middle District as well as the Eastern District.

October 26, 1982, sentenced Pearce to a term of 5 years' imprisonment.

In August 1984, during Pearce's prison term, the government called him to testify before a grand jury sitting in the Middle District of Pennsylvania. Believing that Pearce might invoke his Fifth Amendment right not to testify, the government applied for an immunity order pursuant to 18 U.S.C. § 6001 (1982). A hearing on the application took place on August 31 in the United States District Court for the Middle District of Pennsylvania. Pearce testified that the government had promised him that he would not be called to testify before any grand jury. The government countered by arguing that the terms of Pearce's plea agreement had been determined in the case of *United States v. Drum*, 569 F.Supp. 605 (M.D.Pa.1983).[2]

After Pearce's testimony and colloquy among the parties, the district court determined that the government's promise not to call Pearce extended only to the Eastern District. The court granted the immunity order and ordered Pearce to testify, warning him that he faced contempt charges if he defied the order. Later that day, Pearce appeared before the federal grand jury and refused to answer questions on the grounds that his plea arrangement stipulated that he would not have to testify.

On October 11, 1984, the government commenced criminal contempt proceedings against Pearce in the Middle District. Trial was set for November 29, 1984. On November 7, Pearce moved in the Eastern District of Pennsylvania for "specific performance" of his plea agreement. On November 13, Pearce moved for postponement of his contempt trial pending a determination by Judge Fullam as to the actual terms of his plea agreement. The district court denied the motion on the grounds that the terms of Pearce's plea bargain were irrelevant to the charge of criminal contempt.

The criminal contempt trial commenced on November 29. The government's case consisted of reading into the record the transcripts of the immunity hearing and the grand jury proceedings. Pearce then moved for a judgment of acquittal. The motion was denied, and the defense rested its case. The jury convicted Pearce of criminal contempt and he was sentenced to two years' imprisonment.

Although Pearce raises several arguments on appeal,[3] we see potential merit in

---

**2.** *Drum* involved the contempt trial of John Drum, Pearce's co-defendant in the underlying drug case. The trial revolved around the very issue alluded to earlier, *i.e.,* whether Pearce and Drum were promised that they would not be required to testify anywhere or only that they would not be required to testify in the Eastern District of Pennsylvania. In *Drum,* the court concluded that the promise not to call Pearce and Drum to testify extended only to the Eastern District. Because Drum had tried to incorporate Pearce's plea agreement by reference (Drum's counsel having told Judge Fullam that Drum understood his plea agreement to be in accordance with Pearce's), the *Drum* case largely involved Pearce's agreement. The opinion in *Drum,* however, acknowledged possible differences between the terms of Drum's plea agreement and those of Pearce's. *Drum,* 569 F.Supp. at 611. Indeed, Drum and his counsel were not even in the courtroom when the promise to Pearce was made.

At the immunity hearing, the government did not suggest that the *Drum* decision was *res judicata* as to Pearce. It argued, however, that the court's determination in *Drum* as to the terms of Pearce's and Drum's plea agreement was obviously relevant.

**3.** Pearce argues that the district court committed reversible error by charging the jury that his subjective belief about the plea bargain was no defense against the charge of contempt. Pearce contends that this charge deprived him of the valid defense that he lacked "intent," a necessary element of criminal contempt, because he genuinely believed he was immune from having to testify by virtue of his plea agreement. Pearce is correct that criminal intent is an element of the crime of contempt, and must be proven beyond a reasonable doubt. *Commonwealth of Pennsylvania v. Local Union 542, Intern. Union of Operating Engineers,* 552 F.2d 498, 510 (3d Cir.1977). In *Operating Engineers,* we explained that a "good faith" defense is available to one who mistakenly interprets the scope of an order and thus believes that his conduct conforms to the order. However, we explicitly rejected the notion that one who knowingly violates a court order because he believes the order invalid lacks criminal intent. *Id.* at 510. Pearce, like the defendant in *Operating Engineers,* was indisputably aware that he was violating the court order. Thus, the court's charge

only one—that the district court erred by precluding a defense at the contempt trial based on the invalidity of the underlying order compelling Pearce to testify.[4]

## II.

If the terms of the plea bargain protected Pearce from having to testify, then the order compelling him to testify was invalid. *See United States v. Miller*, 565 F.2d 1273, 1274 (3d Cir.1977), *cert. denied*, 436 U.S. 959, 98 S.Ct. 3076, 57 L.Ed.2d 1125 (1978) ("[I]t is the rule of this Circuit that the Government must adhere strictly to the terms of the bargain it strikes with defendants."). We are not now faced with the question of the validity of the order. Rather, the question before us is whether Pearce should have been permitted to raise the invalidity of the order as a defense at his contempt trial. The district court believed he should not. For the reasons that follow, we disagree.

The rule is that when an order is appealable, and one foregoes the appeal, he may not raise the validity of the order at a subsequent contempt trial; however, if the order is not appealable, and compliance with it will bring irreparable harm, the individual has the option of disobeying the order and raising its invalidity as a defense in subsequent contempt proceedings. *Maness v. Meyers*, 419 U.S. 449, 460, 95 S.Ct. 584, 592, 42 L.Ed.2d 574 (1975); *United States v. Ryan*, 402 U.S. 530, 532–33, 91 S.Ct. 1580, 1581–82, 29 L.Ed.2d 85 (1971).

The defendant in *Ryan*, like Pearce, was issued a subpoena he regarded as unlawful. *Ryan* addressed the question whether the order was appealable. The defendant argued that unless the order was appealable he was put in the untenable position of being forced to comply with an invalid order. The Court explained, however, that defendant had an option. "[C]ompliance is

---

to the jury that Pearce's belief concerning the terms of the plea bargain did not constitute a defense to the contempt charges was proper. We note the anomaly that in certain circumstances a person will be acquitted of contempt if the order he violates is proved invalid, *see infra* pp. 400–402, yet may not raise his *belief* that the order is invalid as an independent defense. If violation of an invalid order is not contempt, then an individual's belief that the order is invalid suggests that he does not believe he is violating the law; it would seem, under those circumstances, that he lacks the intent necessary to be guilty of criminal contempt. However, such an approach would encourage frequent disobedience of court orders. Under current doctrine, defendants defying court orders gamble that they will be able to establish the invalidity of the order at contempt proceedings. If the order is judged invalid, the contempt charge does not stand. If it turns out that the order was valid, the defendant is guilty of contempt and cannot successfully advance as a defense his good faith belief that the order was invalid.

Additionally, Pearce argues that the district court and/or the Government erred by not initiating civil contempt proceedings in lieu of criminal contempt proceedings. This claim is also without merit. While the Supreme Court has said that trial judges must consider whether testimony should be coerced through civil contempt proceedings before resort may be had to criminal sanctions, *Shillitani v. United States*, 384 U.S. 364, 371 n. 9, 86 S.Ct. 1531, 1536 n. 9, 16 L.Ed.2d 622 (1966), we have twice made

clear that an express determination is unnecessary. *In Re Grand Jury Proceedings Harrisburg Grand Jury*, 658 F.2d 211, 217–18 (3d Cir.1981); *United States v. North*, 621 F.2d 1255, 1261 n. 9 (3d Cir.1980). Indeed, in both *North* and *Harrisburg Grand Jury*, we discussed certain circumstances where civil contempt proceedings would clearly be futile. Since civil contempt involves incarceration to coerce cooperation, we observed that it would be futile where the defendant is already incarcerated. *Accord United States v. Wilson*, 421 U.S. 309, 317 n. 9, 95 S.Ct. 1802, 1807 n. 9, 44 L.Ed.2d 186 (1975). Such was the case with Pearce who had several years of imprisonment remaining from his drug conviction.

**4.** The government contends that this issue was waived because Pearce did not argue at trial that the order was invalid. We disagree. In his memorandum accompanying his motion for a continuance pending Judge Fullam's resolution of the plea bargain, Pearce argued that a favorable ruling by Judge Fullam would bar a contempt conviction. The district court's memorandum accompanying its denial of a continuance, *see infra* p. 401, made clear that a defense based on the invalidity of the underlying order would not be permitted. *See American Home Assurance Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321, 325 (3d Cir.1985) (where trial court "made a definitive oral ruling [*in limine*] with no suggestion that it would reconsider the matter at trial," issue was preserved even though not raised in actual trial).

not the only course open to respondent. If, as he claims, the subpoena is unduly burdensome or otherwise unlawful, *he may refuse to comply and litigate those questions in the event that contempt or similar proceedings are brought against him." Id.* at 532, 91 S.Ct. at 1582 (emphasis added). *Accord Marrese v. American Academy of Orthopaedic Surgeons,* 726 F.2d 1150, 1158 (7th Cir.1984), (invalidity of order could be raised as defense at contempt proceeding because party "could not have gotten review of the [ ] order at any stage earlier than the judgment of contempt for disobeying it."), *rev'd on other grounds,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985).[5]

■ The district court misconstrued this doctrine, believing that the alleged invalidity of the order compelling Pearce to testify was automatically irrelevant to the charge of contempt. This view was manifest in the court's ruling on Pearce's motion for a continuance. As noted, Pearce sought a continuance to give Judge Fullam, the sentencing judge, a chance to rule on Pearce's motion for specific performance of his plea agreement. In its memorandum accompanying its order denying a continuance, the district court explained that even if the order compelling Pearce to testify was invalid, that was no defense to the charge of criminal contempt:

Defendant maintains that if Judge Fullam's disposition is favorable to him, this action would obviate the need for the pending criminal contempt trial in this district. Defendant is quite mistaken ... Questioning the wisdom, validity or necessity of a court order is not an excuse to a defendant's refusal to comply with that order. *United States v. Ray,* 683 F.2d 1116 (7th Cir.1982) *cert. denied,* 459 U.S. 1091, 103 S.Ct. 578, 74 L.Ed.2d 938 (1983); *United States v. Berardelli,* 565 F.2d 24 (2d Cir.1977). If one believes an order is invalid, the remedy is to appeal. Absent a stay, however, a person must comply with the order. *If a person makes a private determination that an order is incorrect, even if he is later proved correct, that person may properly be convicted for criminal contempt for violation of that order. United States v. Stine,* 646 F.2d 839, 845 (3d Cir.1981). (emphasis added)

The district court's analysis fails to distinguish between situations involving appealable as opposed to non-appealable orders. The above quotation suggests that one who believes a court order invalid should appeal rather than ignore the order. However, Pearce did not have this option because the order compelling him to testify was not appealable. *In Re Grand Jury,* 619 F.2d 1022, 1024 (3d Cir.1980). For him to have the order compelling him to testify

5. *Halderman v. Pennhurst State School and Hospital,* 673 F.2d 628, 637 (3d Cir.1982) *(en banc), cert. denied,* 465 U.S. 1038, 104 S.Ct. 1315, 79 L.Ed.2d 712 (1984), which involved disobedience of a final court order, not an interlocutory order, is consistent with these cases. In *Pennhurst* we held that the invalidity of the order could not be raised as a defense in a post-judgment civil contempt proceeding but noted that "it cannot be said that this is a case in which no other route to appellate review except self-help was available to the contemnors". In *Commonwealth of Pennsylvania v. Local Union 542, Intern. Union of Operating Engineers,* 552 F.2d 498 (3d Cir.1977), we refused to entertain the invalidity of an order as a defense against contempt, but only because compliance with the disputed order posed no irreparable harm to defendant. That case involved an attorney who refused to obey a court's rulings in a given case. Compliance with the order posed for the attorney only the inconvenience of an

arguably mistaken court decision which could be rectified on appeal, whereas Pearce was faced with the irreparable harm of compelled testimony in violation of his plea agreement. Once he testified, no court could "unring the bell." *Maness, supra,* at 460, 95 S.Ct. at 592. In *Operating Engineers* we noted that *Maness* was based on the unique nature of Fifth Amendment protection from self-incrimination. 552 F.2d at 509. Pearce's unwillingness to testify in violation of his plea agreement is analogous to an individual invoking the Fifth Amendment privilege. *See In re Grand Jury Proceedings,* 601 F.2d 162, 169 (5th Cir.1979) ("We hold the [*Maness*] rule applicable to orders requiring the surrender of other rights or privileges ... where disclosure would cause irreparable injury and the rationale of *Maness* is equally compelling."). We note too that *Ryan* (and *Marrese*) involved a situation outside of the Fifth Amendment context.

reviewed, he had to do exactly what he did—refuse to testify and be charged with contempt. *See In Re Grand Jury Proceedings-Gordon,* 722 F.2d 303, 305–06 (6th Cir.1983) ("Generally an order compelling testimony ... is not appealable. A party seeking to contest the validity of the trial court's order must refuse compliance, thereby inviting a contempt citation....."), *cert. denied sub nom. Doe v. United States,* 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984).

By disobeying the court order, Pearce ran the risk of conviction for contempt in the event the order proved valid. Under *Ryan* and *Maness,* at his contempt trial he was entitled to litigate the validity of the order because he could not take an interlocutory appeal from that order.[6]

### III.

The government alleges, however, that the case at bar is an exception to the *Ryan/Maness* rule because, at the earlier immunity hearing, Pearce exercised the opportunity to make his argument with respect to the plea bargain. Of course, that hearing *preceded* the issuance of the order that Pearce disobeyed and thus was not an appeal from or defense against the contempt charge. Nevertheless, the government argues, insofar as the caselaw stands for the proposition that an individual, prior to a conviction for contempt, deserves some meaningful forum to contest the validity of the order he disobeys, the immunity hearing satisfied that requirement.

■ The determination at the immunity hearing as to the terms of Pearce's plea agreement could not be *res judicata* at Pearce's contempt trial, however, because Pearce was not put on notice that the decision at this hearing would be binding in future contempt proceedings. Since the grant of immunity is generally ministerial, *see In Re Grand Jury Investigation,* 486 F.2d 1013, 1016 (3d Cir.1973) (court serves "purely ministerial function" where grant of immunity is concerned, and has "no discretion to deny" a properly requested order), Pearce had no reason to believe that the immunity hearing represented his sole opportunity to make his case concerning the plea arrangement.

That Pearce did not regard the immunity hearing as his sole opportunity to make his argument about the plea bargain is clear from the immunity hearing transcript:

> PEARCE'S COUNSEL: Based on what you have heard today and what the judge's ruling is and what his understanding of your agreement or lack of agreement in the Eastern District and the Middle District is, is it your intention to follow the judge's order and testify or are you going to not testify?
> MR. PEARCE: I'm not going to testify.
> COUNSEL: *You intend to test this in some other Court?*
> MR. PEARCE: Yes, I do.

Pearce clearly did not regard the immunity hearing as a surrogate for arguing the invalidity of the order compelling him to testify at a criminal contempt trial.[7] Cer-

6. *United States v. Stine,* 646 F.2d 839, 845 (3d Cir.1981), relied on by the district court for the proposition that the invalidity of an order is no defense at a contempt proceeding, is consistent with *Ryan* and *Maness.* In *Stine,* a prisoner violated his probation conditions and, at a probation revocation hearing, advanced the unconstitutionality of the conditions as a defense. We found that even if the prisoner was correct that the conditions were unconstitutional, that was no defense. But we explicitly held that this was the case only because the prisoner had neglected his earlier right to challenge the conditions.

> [We] hold that the alleged unconstitutionality of probation conditions cannot be raised as a defense to their violation in a probation revo-

cation hearing *where the conditions could have been challenged on direct appeal* of the judgment of conviction or on an attack on the sentence through a Rule 35 motion.... *Reliance on the contempt line of cases requires a reviewing court to insure that there were, in fact, procedures available to the defendant to challenge the condition.*

*Id.* at 846 (emphasis added).

7. Indeed the one-day immunity hearing was not treated by any of the parties as a full-scale trial. It is quite possible that if Pearce knew that the immunity hearing posed his sole opportunity to raise the "plea bargain" defense, he would have requested time for discovery or petitioned Judge Fullam for specific performance of his plea bar-

tainly no one told him otherwise. Under the circumstances, the immunity hearing could not suffice as Pearce's sole opportunity to raise the "plea bargain" defense. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all of the circumstances, to . . . afford [parties] an opportunity to present their objections.").

### IV.

Pearce's only potentially meritorious defense against the charge of criminal contempt was that the order he had disobeyed was invalid. Because the district court incorrectly deprived Pearce of this defense, we shall vacate the judgment of conviction and remand this case for a new trial.

Circuit Judge A. LEON HIGGINBOTHAM, Jr. concurs in the result.

gain much earlier, rather than waiting for the contempt trial to make such a motion.
Judge Fullam, as the judge before whom the plea bargain was executed, would seem to be in a position to help clarify matters. *See United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir.

1979). On remand, the district court may wish to refer the matter to Judge Fullam (the current status of Pearce's motion for specific performance is unclear) though it is not required to do so.