**PATRICK KREPPS, Appellant**
v.
**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

D.C. Crim. App. No. 1999/0047

District Court of the Virgin Islands

Division of St. Croix

April 13, 2006

HAROLD WILLOCKS, TPD, St. Croix, U.S.V.I., *Attorney for Appellant*.

MAUREEN PHELAN, AAG, St. Thomas, U.S.V.I., *Attorney for Appellee*.

FINCH, *Chief Judge, District Court of the Virgin Islands*; GOMEZ, *Judge of the District Court of the Virgin Islands*; and THOMAS, *Judge of the Superior Court, Sitting by Designation.*

## MEMORANDUM OPINION

(April 13, 2006)

Following a jury trial on December 15-17, 1999, Appellant Patrick Krepps("Krepps" or "appellant") was convicted in the Superior Court of second degree murder. Krepps filed this appeal. While this appeal was pending, Krepps petitioned the trial court for a new trial based on newly discovered evidence. The trial court subsequently denied Krepps' motion for new trial. This Court granted him leave to file a supplemental brief addressing the latter issue. Krepps now appeals from his conviction and the court's denial of his motion for new trial, arguing:

> 1. The court's exclusion of a police report containing statements which the appellant claims were exculpatory violated rights protected under the U.S. Constitution;
>
> 2. The admission of photographs of the murder victim was unduly prejudicial and violated his rights to due process;
>
> 3. The Court abused its discretion in denying the appellant's motion for new trial based on newly discovered evidence, by considering facts not on the record;

4. The court abused its discretion in finding that the testimony of Carlos Keyes and Nilka Gines was not newly discovered evidence.

The Government challenges the jurisdiction of this Court to review this appeal or, alternatively, to consider the challenges to the denial of the new trial motion which were raised in the appellant's supplemental brief.

For the reasons which follow, this Court will assume jurisdiction to consider the issues raised in both the appellant's opening and supplemental briefs, and further affirm the appellant's conviction and the trial court's denial of the new trial motion.

## I. STATEMENT OF FACTS & PROCEDURAL POSTURE

On October 14, 1997, the family of Kenneth Anderson, Jr. ("Anderson") reported him missing to police; he had not been seen since October 10, 1997. [*See* Affidavit of Detective Stephen Brown; Ct's Mem. Opinion dated June 14, 2001, Supplemental Appendix ("Supplemental App.") at 3-4]. On October 23, 1997, Anderson's badly decomposed and partially mummified corpse was discovered in the brush near the apartment building where Krepps lived at No. 15 Western Suburb. [Supplemental App. at 3].

After that discovery, police interviewed residents of nearby No.15 Western Suburb, where Krepps rented a room in a shared apartment. One resident reported hearing screams coming from Krepps' room on October 10, 1997 and later hearing Krepps and another man carrying something from Krepps' apartment. Krepps' neighbor later noticed blood outside Krepps' bedroom, door and under a sofa in the common area. [*Id.* at 5].

Police subsequently questioned Krepps who, in a written statement, admitted to having left the Company Street Pub with Anderson and another individual on October 10, 1997, and going to his apartment with them. [Statement of Krepps, Supplemental App. at 23-24]. Krepps further told police he had beaten Anderson, punching him anywhere he could, after he awoke and found a naked Anderson trying to remove his clothing. [*Id.* at 24].

Krepps said Anderson initially screamed as he punched him but stopped screaming after falling to the ground. Krepps said he again fell asleep and awoke just as the other male was leaving the apartment. [*Id.*].

Noticing that Anderson was still on the ground and not moving, Krepps picked him up and carried him, along with his clothing, over a little hill in a nearby yard. He later threw Anderson's shoes in the same area.

Krepps told police that when he carried Anderson to the brush, Anderson had blood on his chest and around his nose and was unconscious. [*Id.* at 26-27]. Krepps also noticed blood on the floor in his apartment building. He did not know if Anderson was breathing, however. [*Id.* at 29].

Krepps also admitted to later smelling a foul odor near his residence and said he "suspect[ed] that maybe Ken Anderson was there dead after I heard that he was missing," although he never returned to the area to check. [*Id.*]. Upon a search of Krepps' apartment, police found blood under a sofa near the door, on his mattress, and on a wall in his room.

### Trial Evidence

On October 30, 1997, Krepps was arrested and charged with Anderson's murder. His statement to police was admitted at trial. [See Sup. Ct. Crim. 394/1997, List of Exhs. at ¶ 2].

At trial, Police Detective Stephen Brown ("Detective Brown"), the lead investigator on the case, testified that as part of his duties he compiled all of the reports of other officers working on the case into one investigatory report. [See App. at 60]. He testified that, in doing so, he utilized only the information he thought "pertinent" to the investigation. [*Id.* at 60-65, 70-73]. Therefore, he said, unsubstantiated information from the individual officers' reports was not included in the overall report. [*Id.* at 72-73]. Among the information omitted from Detective Brown's report was information provided by at least two witnesses to Detective Marisol Colon ("Detective Colon") regarding purported sightings of Anderson several days after he was beaten by Krepps.

The defense attempted to admit into evidence the substance of the police report authored by Detective Colon under the residual exception to the hearsay rule, claiming the statements contained therein were exculpatory. The trial court precluded, as inadmissible hearsay, any testimony regarding the contents of Detective Colon's report, and Detective Colon did not testify at trial.

Following a jury trial, Krepps was convicted and judgment entered March 23, 1999. This appeal followed.

## Post-Trial Motion

While that appeal was pending, Krepps filed a motion for new trial based on newly discovered evidence. That motion was premised on the defense's "discovery" of two potentially favorable defense witnesses—Nilka Gines ("Gines") and Carlos Keyes ("Keyes")—in Jacksonville, FL.

Both Gines and her fiance, Keyes, were longtime friends of Krepps and had also worked with him at the Company Street Pub at the time of Anderson's murder. Following his arrest, Krepps' attorney was in contact with Keyes regarding his possible service as a third-party custodian for Krepps. [Supplemental App. at 103-04]. However, both Keyes and Gines testified that sometime in November 1997, they relocated to Jacksonville, FL. [*Id.* at 73-74; 87]. Prior to leaving the island, Keyes visited the Public Defender's Office to notify Krepps' attorney of his planned relocation, although he left no forwarding address. [*Id.* at 74].

Gines and Keyes were also questioned by police during the investigation into Anderson's disappearance. Gines was not identified by name in the report, but only as a pub employee. However, Keyes was identified by name. That report was provided to the defense in January 1998—a full year prior to trial and just months after Krepps' arrest.

An investigator for the public defender's office, which represented Krepps, testified that, upon questioning a Company Street Pub employee, he learned sometime in December 1997 or January 1998 that Keyes had left the island. [*Id.* at 60-61]. However, he testified that the employee with whom he spoke did not know Keyes' whereabouts. The defense ultimately located Keyes in October or November 1999, after receiving information from Krepps' mother. [*Id.* at 63, 68-69].

The trial court noted that the defense proceeded with trial without seeking the court's assistance or notifying the court of any difficulties in securing the witnesses.

The trial court denied Krepps' motion for new trial, holding that the discovery of the witnesses was not newly discovered evidence that could not be discovered with reasonable diligence. Following that denial, this Court granted Krepps leave to supplement his appellate brief to include the new trial issues.

## Jurisdictional Challenge and Master's Findings

On initial appeal, the government challenged this court's jurisdiction based on untimeliness of the notice of appeal. Although Krepps produced a copy of a notice of appeal bearing a February 22, 1999 date stamp of the Superior Court, the only notice appearing in the file and the official trial docket reflects a filing date of May 10, 1999. That notice, which was not an original, also bore a date stamp of February 22, 1999 and a handwritten receipt date of May 10, 1999, which was initialed by a clerk.

Krepps argued he had timely filed the notice in the trial court, on February 22, 1999, and had secured a stamped copy at that time. However, the trial court's clerk was aware of only the May 1999 notice of appeal.

Given the mandate of V.I.R. App. P. 5(b), which requires filing of a notice of appeal within ten days of final judgment in criminal cases, we first remanded this case to the trial court to resolve the discrepancies surrounding the filing date. However, because the trial court recused itself from making that factual determination, we subsequently appointed a master to develop the facts bearing on our jurisdiction.

On July 11, 2005, the master filed a report with this Court which concluded that the notice of appeal was timely filed. Thereafter, this matter was again put to the panel for consideration of the merits.

## II. DISCUSSION

### A. Jurisdiction

■ This Court has jurisdiction to consider final orders or judgments entered by the Superior Court in criminal cases, and to consider a motion for new trial based on newly discovered evidence brought within two years of such judgment. *See* The Omnibus Justice Act of 2005, Act No. 6730, § 54 (amending Act No. 6687 (2004), which repealed 4 V.I.C. §§ 33-40, and reinstating appellate jurisdiction in this Court); Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a;[1] *see also* SUP. CT. R. 135.

---

[1] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2003), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

After considering the existence of a February 22, 1999 notice of appeal bearing the official stamp of the trial court in Krepps' possession; testimony regarding lack of public access to the court's stamp; the common practice in the legal community of obtaining a stamped copy of a document at the time of filing; the trial court's admitted practice of permitting filers to reclaim possession of a stamped document for delivery to the appropriate division; and its record of misplacing filed documents, the master found that the evidence presented sufficiently supported a finding that the notice of appeal was timely filed and recommended granting appellate review. [See Report of Special Master, Findings at 8-13]. Having also reviewed the evidence of record, [See Appendix of Special Master, Hearing Transcript], we adopt the master's recommendation and assume jurisdiction over this appeal. *See, e.g.*, FED. R. CIV. P. 53(g); *compare* FED. R. APP. P. 48.

## B. Standards of Review

 We generally review findings of fact for clear error and afford plenary review to the trial court's determinations of law and claims implicating rights under the constitution. *See Poleon v. Gov't of V.I.*, 184 F. Supp. 2d 428 (D.V.I. App. Div. 2002); *Bryan v. Government of the V.I.*, 150 F. Supp. 2d 821, 827 n.7 (D.V.I. App. Div. 2001). The trial court's admission of evidence is reviewed for abuse of discretion, except to the extent its ruling is based on an interpretation of the federal rules or legal precepts, in which case our review is plenary. *See Gov't of V.I. v. Albert*, 241 F.3d 344, 347 (3d Cir. 2001); *Gov't of V.I. v. Joseph*, 964 F.2d 1380, 1385, 27 V.I. 389 (3d Cir. 1992) (noting that constitutional challenge to the admission of evidence involves the application of legal precepts subject to plenary review).

## C. Whether the Appellant Was Entitled to a New Trial.

In his opening and supplemental briefs, the appellant challenges his conviction on the following grounds: 1)exculpatory evidence was improperly excluded by the trial court, in violation of constitutional due process and Sixth Amendment protections; 2) the trial court admitted "highly prejudicial" photographs of the victim, in violation of constitutional due process; 3) the trial court abused its discretion in denying the appellants' motion for new trial based on newly discovered evidence, by considering extra record facts; and 4) the trial court abused

its discretion in finding that two witnesses who were unavailable for trial were not newly discovered evidence warranting a new trial. We will address each issue in turn.

## 1. Evidentiary Rulings

Krepps mounts two challenges to the trial court's evidentiary rulings, which he claimed impinged on rights protected under the U.S. Constitution: 1) exculpatory evidence contained in a police report was improperly excluded, and; 2) gruesome photographs of the victim were unduly prejudicial and improperly admitted at trial.

### a. Exclusion of Police Report

In support of his argument that his rights to due process and confrontation under the Fifth and Sixth Amendments were violated, Krepps points to the court's exclusion of a police report containing the statements of witnesses regarding their purported sightings of Anderson several days after Krepps admittedly beat him and left him in the brush nearby his home. Those statements were contained in a police report recorded by Detective Colon, who did not testify at trial.[2] That report provided as follows:

> On 16 October, 1997 contact was made at The Company Pub with one female who is a waitress at said location and stated that Ken Anderson is a known customer at the Pub, however, [it] is unknown to her if Mr. Anderson was there on Tuesday evening (10-14-97). Also at said location contact was made with one Carlos Key [sic] who is the cook at the Pub. Same (Carlos Key) stated that Ken Anderson was present at the Pub on Monday, October 13, 1997 after 0200 hrs in the company of a Male Caucasian who weights [sic] approximately 250 lbs.

---

[2] In his brief, Appellant states that, in addition to Detective Colon's report, statements from V.I. Police Sgt. Stephen Brown were also excluded at trial. Detective Brown testified at trial, and the arguments presented in the record target only the Colon report; we have been unable to find anything in the record pointing to the exclusion of a similar report by Brown, however. In addition, the trial court's order ruling on the appellant's *in limine* motion referred only to Officer Colon's report. [See App. at 50]. The court did, however, preclude Detective Brown from testifying regarding the contents of Colon's report.

On 17 October 1997 at approximately 1500 hrs contact was made via telephone with one Loise Bussche ... who stated that on Monday 13 October, 1997 between 1330 hrs and 1345 hrs she observed Ken Anderson on Company Street C'sted. That Mr. Anderson was neatly dressed wearing an olive green pants and similar color shirt. That upon aproaching Mr Anderson same did not recognize Mrs Bussche, she further stated that Mr Anderson appeared to be dazed and walked away from her without saying anything. [sic].

[Supplementary Offense Report dated Oct. 23, 1997, Appendix ("App.") at 46-47]. Krepps asserts the statements contained in Detective Colon's report provided exculpatory evidence that Anderson was alive after his encounter with Krepps. He argues here, as he did below, that the report was admissible under the residual exception to the hearsay rule, as provided under Federal Rule of Evidence 807. We find this argument unpersuasive.

The general exclusion of hearsay testimony at trial is based on concerns of reliability and the lack of opportunity of the parties to test such statements through cross-examination. *See* FED. R. EVID. 803(8) and advisory committee notes; *see also, Idaho v. Wright*, 497 U.S. 805, 814-16, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990). However, the residual exception permits the admission of hearsay evidence not otherwise covered by any other exception, in rare circumstances where it is shown to possess "equivalent circumstantial guarantees of trustworthiness." See FED. R. EVID. 807; *see also, Gov't of V.I. v. Morris*, 191 F.R.D. 82, 86-87, 42 V.I. 135 (D.V.I. App. Div. 1999); *see also Gov't of V.I. v. Joseph*, 964 F.2d 1380, 1388, 27 V.I. 389 (3d Cir. 1992) (noting the express rejection of a mechanical test for trustworthiness and stating such determination may be guided by whether "the test of cross-examination would be of marginal utility.") (quoting *Idaho v. Wright*, 497 U.S. 805, 110 S. Ct. 3139, 3149, 111 L. Ed. 2d 638 (1990)). Apart from the reliability requirement, admission under Rule 807 is proper only where "high degrees of probativeness and necessity are present." *United States v. Wright*, 363 F.3d 237, 245-46 (3d Cir. 2004); *Morris*, 191 F.R.D. 82, 42 V.I. 135 (noting such statements proper where: (1) offered as evidence of a material fact; (2) more probative on the point for which it is offered than any other evidence

which the proponent can procure through reasonable efforts; and (3) where the general purposes of the federal rules and the interests of justice will best be served by admission of the statement into evidence).

In this instance, after reviewing those statements and the appellant's *in limine* arguments, the trial court excluded the statements, holding:

> The report at issue is the officer's recitation of statements given to her by three witnesses. There is, however, absolutely no evidence that the witnesses had a duty to accurately report their observations to the officer. There is likewise no evidence that the officer had any means of verifying the witnesses' statements. Under these circumstances, the court concludes that the report constitutes inadmissible hearsay without any guarantees of trustworthiness.

[Order dated Dec. 12, 1998, App. to Br. for Appellant at 50]. We find no clear error in this determination.[3]

■ Because of reliability concerns, the rules expressly exclude police reports as inadmissible hearsay. *See* FED. R. EVID. 801(a)-(b) (defining hearsay); 803(8) and advisory committee notes (excluding, from the hearsay exception, matters observed by police officers and other law enforcement personnel in criminal cases, noting that because of their adversarial nature between police and the defendant, such reports do not bear the reliability of other official reports). Police reports containing the statements of others are similarly regarded as unreliable, the underlying concern being that such reports simply reflect the statements of third parties who have no duty to report and whose reliability cannot be tested, with all the reliability concerns such hearsay statements present. *See e.g. United Stats v. De Peri*, 778 F.2d 963 (3d Cir. 1985), *cert. denied*, 475 U.S. 1110, 106 S. Ct. 1518, 89 L. Ed. 2d 916 (1986) (holding third-party interviews contained in FBI report not admissible although the reports themselves were admissible as public record); *United States v, Sallins*, 993 F.2d 344, 347-48 (3d Cir. 1993) (noting that, although 911 record was admissible as public record, details of 911 callers not admissible unless covered by separate exception; noting reliability concerns). This rule, therefore, recognizes the inherent unreliability of police reports.

---

[3] *See Wright*, 363 F.2d at 246 (noting the trial court's determination whether a hearsay statement possesses such guarantees of trustworthiness to satisfy the rule is to be reviewed for clear error).

■ The statements at issue here also cannot satisfy the standards for admissibility under FED. R. EVID. 807. The statements were taken during the course of the officer's investigation into Anderson's disappearance. They reflected simply what other parties told the officer, with no indication the accuracy of those statements had been—or could be—verified. Moreover, neither Officer Colon nor the declarants testified at trial. There was, therefore, nothing presented below from which the court—or this court on review—could determine that the circumstances surrounding the statements of the witnesses bore exceptional guarantees of trustworthiness, or that the witnesses had a duty or a particular motivation to be truthful.

In addition, there was little to indicate that the statements would have offered anything to resolution of the central trial issues or bore significant probative value, in view of Krepps' admission that, just days before the witnesses' purported sighting, he had beaten Anderson sufficiently to cause bleeding and unconsciousness and had dumped Anderson's body in the brush where Anderson's decomposed body was ultimately found; his admission that he had later smelled a foul odor in the area and suspected it to be Anderson's body after hearing that Anderson had been reported missing; the witnesses' reports that when seen Anderson was clean and well-dressed as usual and showed no signs of any injury at all, suggesting that those sightings likely occurred before the October 10 beating; the missing person's report indicating Anderson's family had not seen him since the day of his encounter with Krepps; and the forensic evidence establishing that Anderson had been dead for some time before his body was found. Additionally, in her statement to Detective Colon, Gines was uncertain when she had last seen Anderson.

Moreover, because neither Detective Colon—as author of the report—nor the third-party declarants (Gines and Keyes) testified at trial, the report had no impeachment value. Given this, the court did not err in excluding the statements.

### b. Admission of Photographs of the Victim

■ Otherwise relevant evidence may be excluded if the trial court determines it will visit undue prejudice on the defendant. *See* FED. R. EVID. 403. Faced with such a challenge, the trial court must conduct a balancing analysis under Federal Rule of Evidence 403 to determine

whether the probative value of the evidence is outweighed by the danger of undue prejudice. *See* FED. R. EVID. 403; *see also Albert*, 241 F.3d at 347 (noting that photographs depicting a gruesome crime may be admissible if probative of a relevant fact at trial); *Lesko v. Owens*, 881 F.2d 44, 55-61 (3d Cir. 1989). Undue prejudice is found where it "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." *Lesko*, 881 F.2d at 55 (noting that ("[u]nfair prejudice is measured by the degree to which a jury responds negatively to some aspect of the evidence unrelated to its tendency to make a fact in issue more or less probable") (citations omitted)).

█ Where the trial court conducts a balancing analysis under Rule 403, we review for abuse of discretion,[4] and we will not disturb the trial court's determination unless we determine it acted "arbitrarily or irrationally." *Albert*, 241 F.3d at 347 (citations omitted); *see also Government of V.I. v. Pinney*, 967 F.2d 912, 917, 27 V.I. 412-18 (3d Cir. 1992) (noting that trial court's balancing analysis is rarely to be disturbed); *Lesko*, 881 F.2d at 55 (noting that, because the trial court is in the best position to assess the prejudicial impact of evidence in view of the entire proceedings, courts are reluctant fo disturb its rule 403 findings unless the resulting prejudice is of constitutional magnitude). In that regard, appellate courts are cautioned to exercise "judicial restraint" in reviewing Rule 403 determinations, and to uphold a trial court's Rule 403 determination where the evidence had a legitimate purpose and there

---

[4] Contending the defense never objected to the admission of the photos at trial and mounted only a challenge to foundation, the Government asserts the plain error standard of review applies here. However, a review of the trial record reveals an objection was, indeed, lodged by the defense. Those objections were made in a written *in limine* motion, and were rejected by the court. [See App. at 44-45, 51-53]. Thus, Krepps would not have expected a different result through contemporaneous objection. Under the authorities developed in this circuit, this was sufficient to satisfy the objection requirement and to entitle the appellant to less stringent review on appeal. *See Joseph*, 964 F. Supp. 1380, 1384-85 (noting that "if an issue is fully briefed and the trial court is able to make a definitive ruling, the motion *in limine* provides a useful tool for eliminating unnecessary trial interruptions"; noting that where issue decided *in limine*, there is no waiver by failure to raise a contemporaneous objection when evidence offered) (quoting *American Home Assurance Co v. Sunshine Supermkart, Inc.*, 753 F.2d 321, 324 (3d Cir. 1985); citing *United States v. Pearce*, 792 F.2d 397, 400 n.4 (3d Cir. 1986) (no waiver occurred where issue adequately presented in pretrial motion and memorandum)).

was not "an overwhelming probability" that the jury would have been unable to follow limiting instructions. *Albert*, 241 F.3d at 347 (quoting *United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir. 1988); *United States v. Long*, 574 F.2d 761, 767 (3d Cir. 1978)). This is not the rare case reflecting an arbitrary use of discretion warranting reversal, under Rule 403.

Krepps challenges the admission of three photographs of the victim, admitted as Exhibits 3, 4, and 6. Those photographs showed Anderson's corpse, at various angles, in the state in which it was found in the brush near Krepps' home. Exhibit 6 is a distant shot showing the position or location of the body in the brush; Exhibit 4 shows the mummified state of the portion of Anderson's body that was exposed to the sun; Exhibit 3 shows a hole later determined to be a stab wound, in the area of the right armpit. While understandably unsettling, as most photos depicting horrific crimes will be, the photographs had considerable probative value given the facts of the case.

Prior to discovery of his corpse, Anderson had been reported missing for approximately two weeks. Krepps admitted to having beaten Anderson on October 10, 1997, and to leaving Anderson's body in the nearby brush. He additionally admitted he thought Anderson's body to be the source of a foul odor near the apartment shortly after he was reported missing. Police also found blood in several areas of Krepps' apartment. The prosecution's theory at trial was that Anderson had not survived his October 10, 1997 encounter with Krepps.

Given this, the photographs were probative of the location and condition of Anderson's corpse when it was discovered and supported the prosecution's theory that Anderson never survived his encounter with Krepps, given the location of the body and its severely decomposed and mummified state which tended to establish that Anderson had been dead for some time before his body was discovered. *See Albert*, 241 F.3d at 349 (noting videotape relevant to demonstrate the government's theory of how the murder had occurred and to rebut the defense theory regarding the extend of his participation with another individual in perpetrating the crime); *see also Gov't of V.I. v. Commissiong*, 706 F. Supp. 1172, 1186 (D.V.I. 1989) (noting that Rule 403 balancing militated in favor of admission where photographs of murder victim showed the deceased's face, the location of her wounds, and the position of her body, all probative of "the questions of identification, self-defense,

and premeditation") (*United States v. Kilbourne*, 559 F.2d 1263, 1264-65 (4th Cir.), *cert. denied*, 434 U.S. 873, 98 S. Ct. 220, 54 L. Ed. 2d 152 (1977); *United States v. Odom*, 348 F. Supp. 889, 894-95 (M.D. Pa. 1972), *aff'd mem.*, 475 F.2d 1397 (3d Cir.), *cert. denied*, 414 U.S. 836, 94 S. Ct. 182, 38 L. Ed. 2d 72 (1973)). The relevance of the photographs to the fact of death and the condition and location of the body as it was discovered, which were relevant to the manner and probable time of death, all militated in favor of admission of the evidence. Accordingly, the trial court committed no error in admitting the photographs.

## 2. New Trial Motion

Krepps additionally challenges the trial court's denial of his motion for new trial based on newly discovered evidence on two grounds. He argues the trial court considered extra record facts in deciding the motion and improperly determined that the testimony of Carlos Keyes and Nilka Gines was not newly discovered evidence warranting a new trial. However, the government argues these issues are not properly before this Court, given the appellant's failure to amend the notice of appeal or to file a separate notice of appeal following the trial court's post-appeal ruling on that motion. Before reaching the issues raised by the appellant, we must determine our jurisdiction as a threshold matter.

### a. Failure to File Separate Notice of Appeal

As basis for its argument that we are without jurisdiction to review the trial court's denial of Krepps' new trial motion, the government asserts that the appellant was required to file a second notice of appeal following resolution of the new trial motion and could not incorporate his challenges to that motion in the instant appeal. Although the government relies on the federal rules of appellate procedure for its argument in that regard, we note that this court's rules of procedure govern determinations in this Court.

The applicable rules provide that an appeal is perfected by the filing of a notice of appeal after entry of final judgment, or after the court's determination but before entry of final judgment. *See* V.I.R.A.P. 5(b). Under Rule 5's tolling provisions, the time for appeal is tolled by the filing of various motions, including a motion for new trial filed within 10 days of entry of judgment. *Id.* While that rule provides that "a valid notice of appeal is effective without amendment to appeal from an order

676

disposing" of the enumerated motions, it does not specify the course to be followed where a motion not among the types listed is resolved after the filing of a notice of appeal.

We have not previously addressed whether these requirements mandate the filing of a second notice of appeal upon resolution of a new trial motion filed more than 10 days after final judgment, and there appears to be a split in authority among the circuits on this issue.

In *United States v. Burns*, 668 F.2d 855 (5th Cir. 1982), the Fifth Circuit court of appeals held that, because a second notice of appeal during a pending appeal serves a notice requirement, to put parties on notice of the challenged issues, a showing of prejudice is required to decline review, in the absence of express language in the federal rules. *Id.* at 858. The court noted that without such a showing, "it would be unreasonable and unfair to refuse to consider an issue which was thoroughly briefed and clearly recognized as an issue by both parties." *Id.* That court found relevant the absence of any direction to the appellant, either under FED. R. CRIM. P. 33 or FED. R. APP. P. 4, that a second notice of appeal would be required under the circumstances. *Id.*

Similarly in *United States v. Wilson*, 894 F.2d 1245 (11th Cir. 1990), the Eleventh Circuit—adopting the Fifth Circuit's approach—also held that although the better practice is to file a separate notice of appeal from denial of a new trial motion, the failure to file a second notice of appeal is not fatal to the right to review, absent a showing of prejudice. The Ninth Circuit has also held similarly. *See United States v. Davis*, 960 F.2d 820 (9th Cir. 1992); *but see Johnson v. United States*, 246 F.3d 655 (6th Cir. 2001) (holding, in the context of limitation periods in habeas statute, that a Rule 33 motion for new trial was a collateral challenge separate and distinct from the direct appeal, and holding that a second notice of appeal was required).

Apart from the persuasive rationale offered by the majority of circuits addressing this issue, which reject policies denying review based on mere technicalities, there is further support within our appellate rules to permit review under the circumstances without the need for a second notice of appeal.

The rules governing procedure in this Court expressly provide that, even after an appeal is filed, the Superior Court retains jurisdiction to consider and deny any motion for new trial based on newly discovered evidence filed more than ten days after final judgment or order. See

677

V.I.R.A.P. 5(b)(2). That rule requires only that the trial court notify the Appellate Division and request a remand of the case if it is inclined to grant such new trial. *Id.* Moreover, the rules provide that an "appellant shall promptly file in the Appellate Division notice of the filing or pendency of any motion in the lower court and, in addition, shall file the [Superior] Court's resolution no later than ten days after the trial court disposes of the motion." *Id.* at 5(b)(3). That same section further imposes a responsibility on the appellant "to keep the Appellate Division apprised of any change in the status of any action that may affect the appeal." *Id.*

These provisions indicate that the rules contemplate later-filed motions while an appeal is pending and favor consideration of all matters related to the case in a single appeal. The circumstances of this case further militate in favor of granting review, where this Court granted the appellant leave to file a supplemental appellate brief to incorporate challenges to the denial of the new trial motion. [See Ct's Order dated June 14, 2001(denying government's motion to set aside briefing schedule pending resolution of new trial motion and ordering Krepps to file a supplemental brief, if any, by July 16, 2001)]. Accordingly, this Court may properly exercise jurisdiction over the supplemented issues.

### b. Extra Record Facts

We have reviewed the trial court's memorandum opinion denying the motion for new trial and the challenged statements therein, and find the appellant's contention that extrarecord information was improperly considered in deciding the new trial motion to be utterly without merit.

### c. Denial of New Trial

This Court's jurisdiction extends to orders denying a motion for new trial based on newly discovered evidence, which were brought within two years of such judgment. *See* V.I.R.A.P. 5; SUP. CT. R. 135. We review such orders granting or denying a new trial for abuse of discretion. *See Gov't of V.I. v. Sampson*, 94 F. Supp. 2d 639, 643, 42 V.I. 247 (D.V.I. App. Div. 2000) (citations omitted).

The trial court may, "if required in the interest of justice," grant a defendant a new trial. SUP. CT. R. 135. Such a motion may be granted, however, only where the judge finds as follows:

678

(1) the motion must allege facts from which the court may infer diligence on the part of the movant;

(2) the evidence must indeed be newly discovered, meaning discovered since the trial;

(3) the evidence must not be merely cumulative or impeaching;

(4) the evidence must be material to the issues involved; and

(5) the evidence must be of such probative value, and of such nature, that it would probably produce an acquittal if presented at a new trial.

*Sampson*, 94 F. Supp. 2d at 650-51 (citing *United States v. DiSalvo*, 34 F.3d 1204, 1215 (3d Cir. 1994); *Gov't of V.I. v. Lima*, 774 F.2d 1245, 1250 (3d Cir. 1985)); *United States v. Iannelli*, 528 F.2d 1290, 1292 (3d Cir. 1976). All five factors must be shown.

 Applying that test, the trial court found in this instance that the testimony of Gines and Keyes was not newly discovered evidence, where the substance of their testimony was known to Krepps through a police report made available to the defense far in advance of trial or, alternatively, could have been discovered through due diligence. The court additionally determined the witnesses' testimony bore no materiality to Krepps' guilt or innocence and were not such that would likely produce an acquittal. [Mem. Denying Mot. For New Trial, Supplemental App. At 1-15]. This Court agrees.

The statements of Gines and Keyes, both employees of the bar that Anderson frequented and both close friends of Krepps, were known to the defense prior to trial or could have been discovered through reasonable diligence. *See United States v. Jasin*, 280 F.3d 355, 362 (3d Cir. 2002) (newly discovered evidence inquires into whether the evidence was "known to the defendant at trial" and, therefore, it is "not newly discovered when it was known or could have been known by the diligence of the defendant or his counsel") (citations and internal quotation marks omitted). Gines' and Keyes' statements were noted in a police report tendered to the defense in January 1998, just months after Krepps' arrest and a full year before trial. The appellant's awareness of that information is reflected in his attempt to introduce that report as evidence at trial, under a hearsay exception. Under these circumstances,

we find unpersuasive the appellant's assertion that these witnesses and the testimony they would have offered were newly discovered. The trial court also did not err in finding that the record did not reflect reasonable diligence on the part of the appellant to secure these witnesses in the year preceding trial or to engage the aid of the court in doing so.

Apart from the failure to establish the first and second prongs for securing a new trial, as noted above, the appellant also has not established the materiality or probativeness of Gines' and Keyes' statements.

Gines told police in October 1997 that she was unsure of when she had last seen Anderson. [See Supplemental Police Report, Supplemental App. at 18]. At the new trial hearing, Gines—who was Keyes' fiancee both at the time of the incident and the new trial hearing and who had also known Krepps for about five years—similarly testified that she did not know the date she had last seen Anderson. [Supplemental App. at 86-88, 90-91]. She testified, however, that Anderson frequented the Company Street Pub several times per week, mostly at nights. [*Id.* at 93]. On later testimony, Gines said she recalled seeing Anderson sometime in "mid-October" during Monday Night Football. [*Id.* at 94-95]. She further testified that when she last saw him, Anderson appeared neat and unharmed. [*Id.* at 97-98]. Gines also noted there was nothing unusual or strange about seeing Anderson that night to warrant mentioning the sighting to anyone, because she had not heard that he was missing at that time. [*Id.* at 100]. This testimony was not, as the trial court found, probative of the trial issues and would be unlikely to lead to an acquittal, given Gines' uncertainty regarding when she had actually seen Anderson, her description of him as having no cuts or bruises or any other apparent injury, and her recollection that at the time of this sighting he had not yet been known to be missing.

Although Keyes was unwavering in his position that he had seen Anderson on October 13 or 14, during Monday night football, that testimony was also unlikely to lead to acquittal in light of the facts of the case. At the hearing, Keyes testified unequivocally that he had seen Anderson during Monday night football, which he said would have been on October 13 or 14, 1997.[5] [*Id.* at 72.] Despite the fact that Anderson's

---

[5] It should be noted that, while Keyes testified he spotted Anderson on October 13 or 14, 1997, he was unequivocal in his position that it was during Monday night football,

family reported him missing to police on October 14, 1997, Keyes noted that he specifically recalled seeing Anderson on that Monday, because he recalled that "[Anderson] was supposed to have been missing." [*Id.* at 73.] Keyes noted that, at the time of this sighting, he had read newspaper reports about Anderson being missing, but did not call police upon sighting him. [*Id.*]. Asked to describe Anderson's appearance when he saw him on that Monday, Keyes said he looked normal, with "nothing out of order ... very well dressed, you know, hair looking groomed" and no cuts or bruises or other signs of injury. [*Id.* at 84-85].

In light of the foregoing and the facts established on the record, Keyes' testimony regarding his reported sighting of Anderson on Monday, October 13, 1997 is unlikely to produce an acquittal.

The appellant having failed to establish the relevant factors for securing a new trial based on newly discovered evidence, we cannot, on this record, conclude the trial court abused its discretion in denying that motion.

## III. CONCLUSION

For the reasons herein stated, this Court will affirm the appellant's conviction and the trial court's denial of his new trial motion.

---

which made that sighting memorable to him. Having referred to a 1997 calendar, we note that October 13, 1997 was a Monday.